ADAMSON B. NEWKIRK, Appellant, *v.* JOHN E. CONE, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

An agreement between parties (one of whom is an attorney), that the latter should investigate the records of titles to real estate, and decide between conflicting titles as to which is best, acquire such titles, and prosecute for the recovery of them, and, when successful, to divide profits, the attorney furnishing skill, and the other the capital, is not tainted with crime, nor against any statute of this state.

Contingent fees to attornies at law are not against law or public policy.

Maintenance, as defined and punished in Illinois, by statute, has abolished the common law offenses of champerty, barratry, etc., and consists in officiously intermeddling in a suit, furnishing means for its prosecution, with a view to promote litigation.

Where substantial justice has been done, even if errors have been committed on the trial in relation to evidence or instructions, the judgment will not be reversed.

Nor will a judgment be reversed for a refusal to give instructions, unless these correctly state the law, and the facts shall require the application of them, to enable the jury to arrive at a legal conclusion upon the facts.

| | |
|---|---|
| 18 | 449 |
| 48a | 171 |
| 18 | 449 |
| 58a | 578 |
| 18 | 449 |
| 80a | 57 |
| 18 | 449 |
| 179 | 574 |
| 18 | 449 |
| 86a | 243 |
| 88a | 136 |
| 18 | 449 |
| 196 | ¹511 |
| 101a | ⁴541 |
| 18 | 449 |
| 111a | ⁴523 |
| 18 | 449 |
| 113a | ⁴393 |

THIS was an action of assumpsit for professional services, in prosecuting, defending and soliciting divers causes; also, for examining records in public offices, abstracting title to lands, drawing, copying and engrossing conveyances, deeds and writings; also, for journeys and attendance; also, for acquiring, by purchase, for and in the name of defendant, the title to divers pieces and parcels of land, of great value, to wit: of the value of two hundred and fifty thousand dollars; also, for work and labor generally. These all count " on the *quantum meruit*," and are followed by common money counts.

DEFENSE. General issue. Set-off and special contract set out in two pleas, numbered and designated as third and fourth pleas. Payment.

REPLICATION TO DEFENSE. Joinder; on general issue; *non-indebitatus;* that work and labor, etc., were not done under contract set out in defense, issue to country and joinder; that contract was canceled prior to the doing of the work, etc., and that all payments alleged to have been made were advanced as a general retainer, and was not payment, etc.; that, on or about the 1st of April, 1855, the said contract was canceled and annulled by mutual consent. Upon which replications to the defenses made, issues to the country were joined; and upon all the issues, as above stated, the parties went to trial; and the jury rendered thereupon the following verdict: "We, the jury, find the issues for the plaintiff, and assess his damages to the sum of $18,250."

On the trial plaintiff proved the service as aforesaid; also, that defendant had notice in writing, terminating contract set up in defense; also, by admission of defendant that the contract

29

was abandoned and voluntarily canceled, by mutual consent; also, that both parties had acted, during the entire time of the service, without reference to said contract, and inconsistent with the fact of its real subsisting existence.

Plaintiff further proved, that the property procured by plaintiff for defendant was at a mere nominal price, and was worth from $170,000 to $250,000; and that in the suits to try the title the defendant succeeded.

Plaintiff further proved, that his services were worth $20,000 and upward.

Upon this evidence plaintiff rested.

Defendant put in evidence the contract, proved sundry payments of money, as charged in the bill, and introduced evidence of pretended admissions of plaintiff, tending to show that the contract set up in defense was the *contract* between the parties, and under which the services sued for were performed; also, evidence as to value of services.

Thereupon the case went to the jury, upon the instructions marked given.

Defendant moved to exclude all the evidence given by plaintiff from jury; motion overruled and exceptions taken.

There was a verdict and judgment for plaintiff below for $18,250. The cause was tried by a jury, before J. M. WILSON, Judge.

SHUMWAY, WAITE and TOWNE, for Appellant.

The Appellee appeared in person.

SKINNER, J. This was an action of assumpsit. The plaintiff's declaration is in *indebitatus* assumpsit for work, labor, journeys, moneys expended and professional services rendered for the defendant, as an attorney at law. The defendant pleaded the general issue and special pleas of set-off, and setting up a special written contract, under which they allege the services, and so forth, were performed. The defendant traversed the plea of set-off, and to the pleas setting up the written contract, replied, first, that the services were not performed under the written contract; and second, that the written contract was canceled and rescinded prior to the performance of the services; and issues to the country were formed upon these pleadings.

The cause was tried by a jury, a verdict returned for the plaintiff for $18,250, and the court, refusing a new trial, rendered judgment thereon. The assignments of error are grounded upon the assumption that the contract proved is void for maintenance and champerty, and that the court should

have granted a new trial, because the verdict was against the evidence, and for errors committed by the court during the progress of the trial. We will, therefore, proceed to examine whether these assumptions are well founded.

Without entering upon a recital of the evidence, we are satisfied that the jury were justified from it, in finding that the written contract set up in the plea was canceled by the act of the parties, and that the services upon which the verdict is based were not performed under that contract. The jury were justified, from the evidence, in finding that the services were rendered upon an agreement between the parties; that the plaintiff should investigate the public records of titles to real estate in Cook county, and determine, in cases of conflicting titles, which was the better title; that he should purchase such better titles, where practicable, in the name of the defendant, and prosecute suits for the establishment of the titles so purchased; that the defendant should furnish money to make purchases and meet cash outlay; that, if unsuccessful, the defendant should lose his money, and the plaintiff his time and services; that, in the event of success, the defendant should pay the plaintiff liberally for his services; and that plaintiff, by his examinations, did find that certain persons owned a tract of land in Cook county, and which was claimed adversely by others, worth from $100,000 to $250,000, and purchased the same, for a small sum, in the name of the defendant, and which property the defendant held and claimed in fee, under the title so purchased.

By the common law, delivery of possession was essential to the conveyance of land, and without it, a *fee* estate could not pass. And by the common law and ancient statutes in aid thereof, the sale and purchase of titles, where the vendor was not in possession; and of doubtful and disputed titles, with the view of carrying on suits for the maintaining of them, whether the vendor was in or out of possession, or whether the title was good or bad, were prohibited under severe penalties. So, also, the maintaining and carrying on of suits upon agreements to have a part of the land, or right to be recovered, or anything produced therefrom, were unlawful, and punished as offenses. Bacon's Abr., title "Maintenance" A. and D.; 3 Thomas' Coke, Book 3, Chap. 12; 1 Hawkins' Pl., Book 1, Chap. 27; 1 Russell on Crimes, Book 2, Chap. 20.

The statute of 1 Rich. II., Chap 9, reciting: "That many persons, having true title to lands, were wrongfully delayed, by means that the defendants did make gifts and feoffments of their lands in debate, and of their goods, to great men, against whom the pursuants durst not make pursuit, and also

that many persons used to disseize others, and to make feoffments to great men to have maintenance," and so forth, provides that all such grants shall be void, and imposes penalties for making them. See Bacon's Abr., title as above.

It is apparent, from the preamble, that the object of the statute was to protect the rights of the weak against the power of wealth and nobility, and to prevent the use of such power for purposes of annoyance and persecution. And the history of that period teaches that the British lords and nobles were accustomed to buy up disputed titles, and to use them in litigation, with the view, by their great power, to awe into submission and subdue those with whom they were at variance. And the entire doctrine of *maintenance*, for reasons, doubtless, then existing, was carried so far as to render it hazardous for any one, not professionally, to, in any manner, aid or encourage another in the legal vindication of a right. But, in more modern times, the doctrine of *maintenance* has, in England, become essentially modified, and adapted to a better civilization; and in the United States, generally, it is regulated by statute, and, where not so regulated, is received with material modifications. In the case of *Master* v. *Miller*, 4 Tenn. R. 340, the court says : " It is curious. and not altogether useless, to see how the doctrine of *maintenance* has, from time to time, been received at Westminster Hall. At one time, not only he who laid out money to assist another in his cause, but he that, by his friendship or interest, saved him an expense that he otherwise would be put to, was held guilty of *maintenance*. Nay, if he officiously gave evidence, it was maintenance ; so he must have had a *subpœna* or suppressed the truth. That such a doctrine, repugnant to every feeling of the human heart, should be laid aside, must be expected."

Undoubtedly, the common law and British statutes, in aid thereof, as they stood at the period of the first settlement of the American colonies by British subjects—the year 1607— and adapted to our institutions and condition, are the law of this state, so far as they remain unrepealed by statute. But our statutes have materially changed, if they have not wholly superseded, that law, in regard to maintenance and champerty Our statutes dispense with *livery of seizin* in the conveyance of land, and enable any one, claiming right to land, although out of possession, and although the same be in the adverse possession of another, to convey such interest as he may have therein, and give the purchaser the right to sue for the recovery of the land. Statutes 1856, pp. 153, 154.

If the law sanctions the sale by the party out of possesion, of land held under adverse title by another, it necessarily sanctions the purchase of disputed titles, which require the

aid of the law to make them available; and as necessarily sanctions the usual means of ascertaining their existence, and of judging of their validity, by examination of the public records of land titles, and also the prosecution of actions in the courts, for the recovery of the land. It cannot be said that the law authorizes a thing to be done, and, at the same time, denies the ordinary means of doing it.

So far as the contract proved relates to the prosecution of suits for the defendant, in the legal establishment of the rights intended to be purchased, and contemplates a participation in the advantage or profit to accrue from the purchase of the titles, and maintaining them at law, whether treated as a contingent fee for professional services, or as a part of the general undertaking to purchase, prosecute suits, and share in the profits, we cannot discover that it is tainted with crime, or against the provisions of any statute, or that it contravenes any principle of public policy under our land.

As a general rule, all contracts between individuals, not inhibited by law, and not in contravention of public policy, arising out of the law, are valid. We are aware of no law or public policy in this state which would deprive a person, claiming a right, from contracting to pay for legal services, in vindicating it, a stipulated portion of the thing, or of the value of the thing, when recovered, dependent solely upon such recovery, instead of paying, or contracting to pay, absolutely, a sum certain. The suitor may be unable to pay in advance, and without credit, or he may deem such an arrangement most prudent and best calculated to insure vigilance on the part of his counsel; and if he has a cause of action, the courts are and should be open for its legal prosecution.

And our statute, defining and providing for punishment of *maintenance,* under which general name, according to the elementary books, champerty is embraced, seems to have abolished the common law offense, with its divisions and distinctions, and to have, in its stead, created a statutory offense, under the general name *maintenance.* 4 Blackwell's st mis Com. 135, 136. What shall constitute *embracery, barratry* and *maintenance,* respectively, are defined, and punishments provided for each. Can it, then, be said that a distinct offense, called champerty, and which, at common law, was included in the more comprehensive name *maintenance,* exists out of the statute, and by force of the common law or ancient British statutes. Under our statute, the offense of *maintenance* consists in a person officiously intermeddling in a suit which in nowise belongs to or concerns him, by maintaining or assisting either party with money, or otherwise, to prosecute or defend such suit, *with a view to promote litigation;* and by no

legitimate construction can it extend to many acts deemed maintenance at common law. Statutes 1856, p. 380.

We hold the verbal contract proved valid under our law, and, in a mere moral view, we have no authority to consider it for the purposes of this case. *Johnson* v. *Bright*, 15 Ill. R. 464; *Findon* v. *Parker*, 11 Meeson and Welsby's R. 675; *Call* v. *Calif*, 13 Met. R. 362; *Thallheimer* v. *Brinkerhoof*, 3 Cow. R. 623; *Spencer* v. *King*, 5 Ohio R. 113; *Bayard* v. *McLane*, 3 Harrington's R. 139; *Caldwell* v. *Shepherd*, 6 Monroe's R. 389; *Ramsey* v. *Trent*, 10 B. Monroe's R. 336; *White* v. *Roberts*, 4 Dana's R. 172.

The motion for a new trial brought before the court all objections raised upon trial, including those arising upon instructions, and also the question of the sufficiency of the evidence to sustain the verdict; and in considering this motion, we shall dispose of these questions collectively, and without particular reference to the several assignments of error—thirty-four in number, and requiring, for examination in an opinion, an amount of time and a length wholly inadmissible, in view of the duties imposed upon this court.

The evidence is sufficient to justify the verdict, and we can discover, upon the whole case, no error in law, in legal effect, prejudicial to the defendant, and which, upon this record, entitles him to a reversal of the judgment. Evidently, substantial justice has been done between these parties, and the defendant has no just cause of complaint. And in such case, this court will not reverse a judgment, even if errors have been committed by the court below upon the trial, in the admission or exclusion of evidence, or in the giving or refusing instructions. *Gillett* v. *Sweat*, 1 Gilm. R. 475; *Greenup* v. *Stoker*, 3 ibid. 202; *Smith* v. *Shultz*, 1 Scam. R. 491; *Leigh* v. *Hodges*, 1 ibid. 15.

Any other rule in this court would often prevent the administration of justice, render trial by jury a farce, and a verdict a misfortune to the party in whose favor it is returned.

Nor will this court reverse a judgment for refusal of the court below to give instructions, unless they correctly state the law, and the facts appearing require the application of the principles contained in them, to enable the jury to arrive at a legal general finding. 1 Scam. R. 407; ibid. 47; 2 ibid. 368; 3 ibid. 218; 4 ibid. 58; 1 Gilm. R. 10; ibid. 556; 2 ibid. 285; 4 ibid. 125; 14 Ill. R. 472.

Otherwise, no injury, in contemplation of law, can accrue to the party complaining of the error.

It is the duty of counsel to demand only such instructions as are applicable to the case before the jury, and as are calculated to enable the jury to arrive, upon consideration of

the facts, and the law applicable to them, to a correct general finding. Beyond this object and effect they are a snare, tend to the perversion of jury trial, and should be refused by the court.

*Judgment affirmed.*