113    381
a211s 279

## Josie Feitl, Admx., v. Chicago City Railway Company.

### Gen. No. 11,006.

1. INTERESTED WITNESS — *who incompetent as such.* Where the plaintiff sues as administratrix, the motorman of the defendant company, who in the event of recovery against such defendant would be liable over to it, is an interested witness within the meaning of the statute and incompetent when called by such defendant company.

2. VERDICT—*when, not set aside for error in admission of testimony of incompetent witness.* Where the evidence, disregarding the testimony given by such a witness, is such that the jury could not reasonably have rendered any other verdict, and a different verdict, if rendered, must have been set aside as manifestly against the weight of the evidence, the admission of the testimony of such incompetent witness constitutes harmless error, and will not affect the verdict and judgment.

3. PRESUMPTION OF NEGLIGENCE—*what does not raise, where passenger has been injured.* The mere fact that a passenger has been injured *en route* without any evidence whatever as to the manner in which the accident occurred, does not raise a presumption of negligence against either of the parties; but the burden of proof shifts where the accident proceeds from an act of such a character that when due care is taken in its performance, no injury ordinarily ensues from it, or where it is caused by the mismanagement of a thing over which the defendant has immediate control or for the management or construction of which it is responsible.

4. INSTRUCTION—*must be predicated upon the evidence.* An instruction is properly refused where there is no evidence upon which to base it.

5. INSTRUCTION—*must not intimate view of court.* An instruction which instead of defining the duty of a motorman in the premises, states that he has no right to run upon the person whose death was caused by the accident sued upon, is erroneous, in that it is calculated to impress the jury that, in the opinion of the court, such motorman intentionally operated the car against the vehicle being driven by such person.

6. INSTRUCTION—*containing mere repetition need not be given.* An

instruction substantially included in other instructions given, may properly be refused.

7. INSTRUCTION—*must not assume facts in dispute.* An instruction which assumes that the deceased was driving in the track in front of a car at the time of the accident, is erroneous, where such fact is the subject of conflicting testimony.

8. WANTON NEGLIGENCE—*when court may instruct question of, out of case.* It is proper for the court to instruct the jury that there is no evidence of wantonness or wilfullness on the part of the defendant, where such instruction is borne out by the facts in the case.

ADAMS, P. J., dissenting.

Action on the case for death caused by alleged wrongful act. Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1903. Affirmed. Opinion filed March 31, 1904.

JONES & LUSK, for plaintiff in error.

WILLIAM J. HYNES, JAMES W. DUNCAN and C. LEROY BROWN for defendant in error; MASON B. STARRING of counsel.

PER CURIAM.

Plaintiff in error sued defendant in error, alleging that defendant in error was guilty of negligence in causing the death of plaintiff's intestate, Hynek Feitl, deceased. The parties will be referred to, respectively, as plaintiff and defendant. About 7:15 o'clock in the evening of March 3, 1901, a trolley car running east on Forty-seventh street, in the city of Chicago, collided with a buggy, in which the deceased and another person were riding, on the track on which the car was running, a short distance (variously estimated by the witnesses from fifty to one hundred and twenty-five feet) east of California avenue, in said city, and plaintiff's intestate was killed by the collision. Forty-seventh street lies east and west and California avenue north and south. In the former street there are two tracks, the south track is the east-bound, and the north the west-bound track. The termini of the cars running on these tracks are Ashland avenue on the east and Kedzie avenue on the west, and the car in question started east from the latter street. The declaration consists of five counts. The

Feitl v. Chicago City Ry. Co.

first alleges negligence generally, in management of the motor and motor-car. The second, failure to ring bell or give any warning of approach of car. The third, excessive speed at the place of the injury. The fourth, failure of motorman to keep strict watch and lookout over the track. The fifth, that the defendant, by its servant, the motorman, recklessly, wantonly and wilfully ran upon plaintiff's intestate and killed him.

The defendant pleaded the general issue. The jury found the defendant not guilty and judgment was rendered on the verdict.

Plaintiff's counsel contend that defendant was guilty of negligence as charged in the declaration; that there is no evidence to the effect that the plaintiff's intestate is chargeable with contributory negligence; that the court erred in admitting incompetent evidence for the defendant, and also in refusing instructions asked by the plaintiff, and in giving instructions asked by the defendant. In respect to the evidence, the question to be decided is, whether the verdict is manifestly against the weight of the evidence, because, unless it is, it must be sustained. Having read all the evidence on which the verdict was rendered, we are satisfied that the verdict is not against its weight, and that it is fully sustained by the evidence. On the trial the defendant called as a witness George Pett, motorman of the car which collided with the buggy in which plaintiff's intestate was riding, and after the witness was sworn, and immediately on his testifying that he was the motorman, plaintiff's attorney objected that he was incompetent, on the ground that the suit was brought by the administratrix of the estate of the deceased, and the witness would be liable to the defendant for any damages which might be recovered in the action; but the court overruled the objection and permitted him to testify, to which ruling plaintiff's attorney excepted. The witness testified, substantially, as follows :

" We started from Kedzie avenue, and from there to the scene of the accident is a little over half a mile. Accident

happened about 125 feet east of California avenue. No
street lights nor lights in buildings. We were running east
on the south track. The very first time they came into my
sight was I saw some dark object cross in front of me to-
wards the south—southeast; at the moment this object
struck my view crossing in that way, I would say the ob-
ject was about fifty feet from the forward end of my car.
We were running in the usual manner, about ten miles an
hour. I first rang the bell and threw the power off, and
drew the brake up immediately, as fast as possible. The
apparatus, including the controller and the brake, was in
first-class condition; there was a headlight on the car
burning brightly on the front dash. The rim of the hind
wheel and the rim of the front wheel struck the front of
the car, the hind wheel on the right-hand side of the rig;
the men went over sideways to the south; the car went
about fifteen feet before it came to a standstill; the head-
light was broken; I found one man south of the car and
another underneath the track fender with his head to the
south; his head was protruding from the south track; the
night was dark and smoky. At the instant my eye first
caught the rig the horse was stepping over the north rail
of the east-bound track. The car responded to the brake
very quickly. I was in the best of health and in possession
of all my faculties. I tapped the bell crossing California
avenue; it gave a clear sound of a gong."

Section 2 of chapter 51 of the statute in regard to evi-
dence, which contains exceptions to section 1, which re-
moves the disqualification of parties to and persons inter-
ested in the event of a suit, is as follows: "No party to
any civil action, suit or proceeding, or person directly
interested in the event thereof, shall be allowed to testify
therein of his own motion, or in his own behalf, by virtue
of the foregoing section, when any adverse party sues or
defends as the trustee or conservator of any idiot, habitual
drunkard, lunatic or distracted person, or as the executor,
administrator, heir, legatee or devisee of any deceased per-
son, or as guardian or trustee of any heir, legatee or devisee,

Feitl v. Chicago City Ry. Co.

unless when called as a witness by such adverse party so suing or defending."

Defendant's counsel contend that the motorman is not within the exception mentioned in section 2; that he was not directly interested, and they have elaborately argued the question whether he was directly interested. The plaintiff is the administratrix of the deceased; the motorman was called as a witness by the defendant;. in the event of a recovery by the plaintiff, he would be liable to the defendant for the damages recovered, (1 Shearman and Redf. on Negligence, 4th ed., sec. 242; G. & C. U. R'd Co. v. Welch, 24 Ill. 31; Brunner v. Battell, Excr., 83 Ill. 317,) and the judgment would be competent evidence in a suit by defendant against the motorman, to show what damage the former had sustained by reason of the latter's negligence. R. R. Co. v. Welch, *supra*. Under these circumstances we cannot regard the questions, whether the motormon was directly interested, and whether, being so, he was incompetent to testify for defendant, as open questions in this state. In R. R. Co. v. Welch, *supra*, the action was case for negligence, in improperly constructing a culvert, or negligently permitting it to be out of repair, *per quod* the plaintiff's premises were injured. The railroad company called its chief engineer, under whose directions and supervision the culvert was constructed. It was objected that he was directly interested, and the court so held, on the ground that he was responsible to the company for damages in the event of a recovery against the company. In C. & R. I. R. R. Co. v. Hutchins, 34 Ill. 108, the company was sued for negligence, by reason of which plaintiff's mare and colt were killed by its engine. In one of the counts of the declaration the negligence averred was failure to ring a bell or sound a whistle eighty rods from the crossing where the accident occurred. The defendant called the engineer as a witness, whose duty it was to ring a bell or sound a whistle, and asked him if the bell was rung, to which question an objection by the plaintiff was sustained by the trial court. The Supreme Court

sustained this ruling, saying : " Such being his duty, by a neglect to perform it on his part, he becomes liable over to his employers when they have been compelled to respond in damages for his non-performance of duty. This being so, he has a direct interest in preventing a recovery against tbe company. Galena and Chicago Union R. R. Co. v. Welch, 24 Ill. 31." See Brunner v. Battell, Exr., 83 Ill. 317, 320, and Plain v. Roth et al., 107 Ill. 588, 595–6. In the last case it was urged that Devine, the witness, did not testify on his own behalf, in regard to which the court said : " It is said that under this exception of the statute the witness must testify in ' his own behalf,' and that the witness did not here so testify. He did not testify in his own behalf as a party, but he did testify in his own behalf as a witness. We agree with the court below in holding this witness to be incompetent." See, also, Off v. Trapp, Admr., 109 Ill. App. 49.

As to a liability of the witness to the party calling him, in the event that there would be a recovery against such party, being such interest as renders the witness incompetent at common law, see The Governor v. Daily, 14 Ala. 469, 472, and Southard v. Wilson, 21 Me. 494. In 3 Jones on Evidence, sec. 744, the author says that if the interest of the witness consists of a liability over, his competency may be restored by a release from the person to whom he is liable, citing cases in n. 4, p. 1601. Counsel for appellant rely on the case of Ill. Cen. R. R. Co. v. Weldom, Admr. 52 Ill. 290. In the opinion it is stated that one Wooley, who was called as a witness by the railroad company, was liable over to the company, and, therefore, incompetent at common law; but that the act of 1867 rendered him competent; and the court, Breese, C. J., delivering the opinion, refers to section 1 of the act of 1867, and to that section only. We learn further from the opinion that while the witness was rejected by the trial court when first called, he was subsequently released by the railroad company, and, as the court says, " He was sworn and examined and testified fully in the case." We think it evident

from the opinion that the second section of the act, which continues the common law disqualification in such case as was then before the court, was not called to the attention of the court in argument; for had it been, so able a jurist as was the learned Chief Justice would have, at least, noticed it in the opinion. The decision of the question as to the competency of the witness was clearly unnecessary, he having fully testified in the cause. In view of the latter decisions of the Supreme Court in cases analogous to the present, in so far as the question involved is concerned, and in view of the fact that the question of the competency of the witness was practically eliminated by the execution of a release to him by the company, and by his examination as a witness, we do not feel bound by the court's expression of opinion as to his competency. But notwithstanding the error of the trial court in the present case in overruling the objection to the motorman's testimony, the question remains to be considered, whether, disregarding his testimony altogether, and considering the case as though he had not testified, the other evidence in the case is such that the jury could not reasonably have rendered any other verdict; such that if the jury had rendered a verdict for the plaintiff, it would be our duty to set it aside as being manifestly against the weight of the evidence. An answer to this question requires consideration of the evidence. The plaintiff called only one witness, James Gill, who testified substantially as follows: that he was a passenger on the car and was sitting at the front end of the car, inside the window, looking out, and was about three feet from the motorman; that about 100 feet east of California avenue his attention was first called to the buggy being on the track, by the jerking of the car from the motorman putting on the brake, and that the first thing he saw was the wheels of the buggy, about four or six feet ahead of the car; that he didn't see the buggy more than half a second, until it had gone up in the air; that the buggy was on the east-bound track, the hind wheels straight on the track; that there were two lady passengers on the

left-hand side, of the car, about the middle of the car, on the south side; the car was going about twelve miles an hour. The horse ran away with the front wheels. "It was a moonlight night; we ought to see an object a block ahead. Of course, I couldn't see at that time. There is only room for two tracks on the street, and there are only about three feet on each side not taken up by the tracks, and there are sloping ditches on each side about three feet deep. The street is straight and the tracks in good shape, level and dry; no obstruction to prevent one from seeing a buggy ahead, east from California avenue. The nearest light to the intersection of California avenue and Forty-seventh street is at Rockwell street, three or four blocks distant. My hearing was good, and I heard no bell or shouting." On cross-examination the witness testified, in substance, that he saw no one in the buggy, and did not see the head-light or fender of the car, and did not think the bell might have rung and he not have heard it; that the accident happened Sunday, and on the next Tuesday he testified at the coroner's inquest, and then stated that the buggy was about four feet from the car when he first saw it, and that it was of the ordinary height, and square in the track; that he could see no lower than the upper rim of the dashboard of the car; that the car ran about fifteen feet after the collision; that at the coroner's inquest he said ten feet; that it was by the light of the headlight of the car that he first saw the buggy; that he didn't see the horse run away, and didn't know what became of him; that when the accident happened he got up and went outside in about half a minute; that no one spoke to him; that he did not sit in the car in a half stupid, drowsy way until one of the ladies appealed to him to go out and see what he could do, and did not dance in the car; that he started from Kedzie avenue to go to a political meeting to be held at eight o'clock at 917 W. Forty-seventh street, near Halsted street, and was at the latter place an hour and a half after the accident; that he remained about five minutes after the accident, when an east-bound car came along, which he took, and went east

to Halsted street, changing cars at Ashland avenue; that he remembered talking to two young men at Ashland avenue about the accident, and that one of them asked him for a statement of the accident, which he declined to give him, and that he did not tell the young men that the motorman was not to blame; that he, witness, was sober, and had not drank anything; that the country around Forty-seventh street and California avenue was all prairie; no structures of any kind, and that he noticed nothing unusual about the speed of the car.

F. J. Walz, called by plaintiff, testified that he was fore-caster for the U. S. weather bureau; that a record of the condition of the weather was kept in the office, and that the record showed that, at seven o'clock in the evening of March 3, 1901, the weather was clear; that the moon on that evening rose at 7:30 o'clock; that there were no clouds to speak of; that the wind was thirty miles per hour from the east, and the temperature was thirty-six degrees above freezing, and that the humidity was eighty-three per cent saturated.    On cross-examination the witness testified that the observations were made at the Auditorium tower, four or five miles from Forty-seventh street and California avenue, and that the velocity of the wind and the condition and effect of clouds, whether passing or stationary, can vary as between places five miles apart.    The witness also testified that at the time the observations were made, he was on the ocean, returning from Europe.

John Feitl, brother of the deceased, called by plaintiff, testified that the deceased left a widow, Johanna Feitl, and four children, giving their names and ages; also, that the night of the accident was a nice moonlight night as far as he could remember.

Plaintiff also put in evidence her letters of administration.    The death of plaintiff's intestate, as a result of the accident, was admitted by defendant.    The foregoing is all of the plaintiff's evidence.

The only evidence of Gill as to the accident is, that the first thing he saw was the buggy about four or six feet

ahead of the car, which was almost the instant of collision. He says he didn't see the buggy over half a second before it was up in the air. This evidence is, in substance, that the collision occurred. Counsel for plaintiff, apparently appreciating this, contend that the doctrine *res ipsa loquitur* is applicable. But such is not the law of this state. In C. C. Ry. Co. v. Rood, 163 Ill. 477, the question is very thoroughly considered. The court say : " The weight of authority seems to be in favor of the position, that the mere happening of the accident, together with the exercise of ordinary care by the plaintiff, does not alone raise the presumption of negligence 'on the part of the defendant carrier. The rule is thus stated by Booth in his work on Street Railway Law (sec. 361): ' The mere fact that a passenger has been injured *en route*, without any evidence whatever as to the manner in which the accident occurred, does not raise a presumption of negligence against either of the parties, but the burden of proof shifts where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it, or where it is caused by the mismanagement of a thing over which the defendant has immediate control, or for the management or construction of which it is responsible.' Where the injury occurs by reason of any defect in the machinery or cars or apparatus, or track of the carrier, or where there is anything improper or unskillful or negligent in the conduct of its servants, or unsafe in the appliances of transportation, the presumption then arises in favor of the negligence of the carrier, and the burden of rebutting this presumption is thrown upon it." In the present case there is no evidence that there was any defect in the machinery, cars, apparatus or track; or anything improper, unskillful or negligent in the conduct of the conductor or motorman of the car, or unsafe in the appliances of transportation. See, also, C. C. Ry. Co. v. Catlin, 70 Ill. App. 97.

Gill testified : " It was a moonlight night. We ought to see an object about half a block. Of course, I couldn't

see at that time." And yet he testified that he was in the front part of the car, under the window, about three feet from the motorman, looking out, and that, when he saw the buggy, he saw it by the light of the car headlight. John Feitl testified that it was a nice moonlight night, as far as he could remember, but said he could not remember what kind of night the Sunday night before, or the Sunday night after the accident was. Gill also testified that he heard no ringing of the bell. We will now refer to the testimony of the defendant's witnesses. Nellie Drake testified that she was a passenger on the car, and sat on the south side of it near the middle, and that, when the accident happened and everything was still, Gill was sitting on the side of the car and she said to him, " Why don't you go out and assist the train men?" and that he rose and danced on the floor and went out of the rear door and she saw no more of him.

Mamie Kieley testified that she was a passenger on the car, and that when the car stopped Gill was sitting at the front end of it and didn't seem to be paying attention to anything.

R. W. Holland, a clerk in the stock department of the defendant and adjuster of claims, testified that he met Gill at the corner of Ashland avenue and Forty-seventh street about one hour or an hour and a half after the accident, and that he was very drunk; that Gill said the motorman was not to blame, and when witness asked him to give a statement, he said, substantially, " No, I won't give it to you; when it comes into court I will tell all about it." The witness also testified that Keenan, a friend, was with him at the time.

Frank A. Keenan testified that he was a railroad clerk employed by the Pennsylvania company, and was with Mr. Holland at the time and place testified to by the latter, and that Gill said to Holland that the motorman was not to blame for the accident. Eight witnesses for defendant, excluding the motorman, testified that the night was dark, some of them, that it was very dark. The conductor of the

car testified that when the car was about fifty feet east of California avenue he was between the middle of the car and the rear door, just after collecting fares, and that he then heard the bell ring and the motorman shout, and felt the appliance of the brakes; that the car commenced to tremble; that he went to the front and looked out, and the instant he did so, he saw a dark object forty or fifty feet in front of the car; that it was going east and turned south, and that the car went ten or fifteen feet after the collision before stopping; that it was very dark at the time. On cross-examination the witness testified that, by the headlight, an object could be seen fifty feet ahead, and that it could not have been more than three or four seconds from the time he heard the bell till the accident occurred; also, that at the coroner's inquest he testified that the car ran sixty or seventy feet before it came to a dead stop.

Lemuel D. Fuller testified that he was engineer at the Soldiers' National Home in Wisconsin, and was, in March, 1901, living with his brother-in-law near Danville, Illinois, and that, in the evening of March 3, 1901, he arrived in Chicago about 6 or 6:30 o'clock, and started for the Transit House, to remain there over night; that he was walking east on the north side of Forty-seventh street on the sidewalk, when, about 7:15 o'clock, he heard a street car coming at the next street, and heard a gong ring, and a couple of gentleman came along in a buggy, on the north side of the street, and that they drove from the north side onto the south track, right in front of the car, and the collision occurred; that witness saw the headlight and heard the gong ring, but could not tell what the motorman did, because it was dark; that it was a very dark, foggy night; that the car did not run over fifteen feet after the collision. On cross-examination the witness testified that, as an engineer, he knew it was impossible for the motorman to stop the car in time to avoid the accident.

Benjamin C. Fox, a policeman, testified that he was on the west platform of a car which was standing still on the south track at Forty-seventh street and Kedzie avenue,

which is the west end of the route, from which the car in question started east; that the persons who were in the buggy at the time of the accident were on the north side of Forty-seventh street, driving east; that there was no light on the buggy, and that he cautioned them about not having a light on their rig, and told them they wanted to be careful of the cars, and they muttered back something which he could not understand.   He also testified that the night was dark, that the moon was rising, but it was hazy. The witness testified that about ten minutes after he cautioned the men the accident occurred.   The defendant put in evidence an ordinance of the city of Chicago, declaring it to be unlawful for any owner of any vehicle to use the streets of the city during the period commencing with November 1 and ending March 31, after six o'clock P. M., without having displayed one or more lights or lanterns.   Without considering the evidence further, it is sufficient to say our conclusion is, that the jury could not on evidence, exclusive of the testimony of the motorman, have reasonably rendered a verdict other than that rendered, and that had they rendered a verdict for the plaintiff on the evidence, exclusive of the motorman's testimony, it would be our duty to set it aside as being manifestly against the weight of the evidence.   We understand the rule to be, that when the jury could not reasonably have rendered a verdict other than they did, and when, in view of the entire record, substantial justice has been done, the verdict will not be set aside because of error in instructions, or in the admission or rejection of evidence.   Greenup v. Stoker, 3 Gilm. 202, 215, 216;   Newkirk v. Cone, 18 Ill. 449, 454;   Hewitt v. Jones, 72 Ill. 218, 221;   Williamsburg City Ins. Co. v. Cary, 73 Ill. 453;   Crown Coal & Tow Co. v. Taylor, 194 Ill. 250, 254;   City of Chicago v. Jackson, 88 Ill. App. 130, 136.

In Greenup v. Stoker, *supra*, the court, after citing cases, say:   "From all these authorities the rule may be easily deduced, that a court will not grant a new trial, or reverse a judgment on error, because of the admission of improper

or the rejection of proper testimony, or for want of proper direction or misdirection of the judge who tried the cause, provided the court can clearly see, by an inspection of the whole record, that justice has been done, and that the error complained of could not have affected the merits of the cause, or influenced the verdict of the jury."

In Hewitt v. Jones, *supra*, the court say : " The statute of this state authorizes the assignment of error upon the refusal of a motion for a new trial, but the circuit courts are, nevertheless, regarded by this court as clothed with a discretion, as at common law, to be exercised in such manner as will best answer the ends of justice. Upon this ground it has been held, in numerous cases, that when it clearly appears that on another trial a verdict must inevitably be the same, or that substantial justice has been done, a new trial will not be granted, although the court erred in some of its instructions." Citing numerous authorities.

Counsel for plaintiff complain of the refusal of plaintiff's instructions 24, 25 and 26, and the giving of defendant's instructions 11, 12, 13 and 14. Instruction 24, if given, would have submitted to the jury the question whether the motorman managed the car recklessly and wantonly, and the question whether the accident was the result thereof. We think the instruction was properly refused, for the reason that there was no evidence on which to base it. Instruction 25 states, substantially correctly, as we think, the relative rights of the street car company and persons traveling in the streets. The instruction concludes thus: " But while it is the duty of the individual driving a vehicle ahead of an approaching street car, on a public street, to promptly turn out, if he has knowledge of the approach of said car, yet his failure so to do does not give the motorman the right to run upon the individual driving the vehicle." We think the last part of the instruction obnoxious to criticism. Instead of defining the duty of the motorman in the premises, it states that he has no right to run upon the individual driving the vehicle. This, we think, was calculated to impress the jury that, in the

court's opinion, the motorman intentionally operated the car against the buggy, of which there was no evidence. The instruction was properly refused. Instruction 1 given for plaintiff, correctly instructed the jury as to the relative duties of the deceased and the motorman, when the car was approaching the buggy. The twenty-sixth instruction, in so far as material, is included in plaintiff's instructions 1 and 2. Instruction 1 informed the jury that it was the duty of the motorman to use reasonable care to avoid injury to the deceased, and instruction 2 authorized the jury to find the defendant guilty, if they believed from the evidence it was guilty of the negligence charged in the declaration. Instruction 26 assumes that the deceased was driving in the track in front of the car at the time of the accident, as to which there is a conflict in the evidence. One witness, at least, testified that the buggy, before the accident, was being driven on the north track, and that it was driven onto the south track, in front of the car, immediately before the collision, and another witness testified that when the buggy left Kedzie avenue it was traveling east on the north side of Forty-seventh street. We think the refusal of the instruction was not error. We find no error in the giving the defendant's instructions 11, 12, 13 and 14. The court, by defendant's twentieth instruction, informed the jury that there was no evidence of wantonness or willfulness on the part of the defendant, and that they should disregard the fifth count of the declaration. The instruction was proper. We agree with the trial court that there was no evidence tending to prove wanton or wilful conduct in operating the car on the part of the motorman.

The judgment will be affirmed.

*Affirmed.*

ADAMS, P. J., dissenting.

I cannot concur in the opinion of the court, in so far as it is held that the judgment should be affirmed notwithstanding the erroneous admission of the testimony of Pett, the motorman. The reason given is, that had the evidence,

exclusive of Pett's testimony, been submitted to the jury, they could not reasonably have rendered a verdict for the plaintiff. But the case was not submitted to the jury on that evidence, but on all the evidence; and the verdict of the jury was on all the evidence, including the very material evidence of Pett. There has been no trial and no verdict on the evidence exclusive of Pett's testimony; so that the judgment is affirmed on evidence on which no verdict has been pronounced, and on the hypothesis that if the evidence, exclusive of Pett's testimony, were submitted to a jury, the jury could not reasonably find for the plaintiff. This is, in effect, to deprive the plaintiff of a trial by jury— to substitute for the verdict of a jury the judgment of the court as to the facts. So tenacious is the law of this state in respect to the right of parties litigant to a trial by jury, that the trial court cannot take a case from the jury, if there is evidence fairly tending to support the plaintiff's case, even though there is a clear preponderance of the evidence in favor of the defendant. The court cannot weigh the evidence on a motion to take the case from the jury. Roberts v. C. & G. T. Ry. Co., 78 Ill. App. 526, 529–30, and cases cited; and Corbin v. W. Electric Co., 78 Ill. App. 525, and cases cited.

It cannot be said, as I think, that had the testimony of Pett been ruled inadmissible and rejected, the trial court, at the close of the evidence, could properly have taken the case from the jury. Gill testified that the speed of the car was about twelve miles per hour; that the track was in " good shape, level and dry;" that it was a moonlight night; that in the street there is only room for two car tracks, and that on each side of the tracks there is a space three feet in width next to a sloping ditch three feet deep, and that there are no obstructions east of California avenue to prevent one from seeing a buggy east and ahead. Walz and John Feitl both testified that there was moonlight. Fieldstack, the conductor of the car, testified that when he first looked out the buggy was fifty feet ahead of the car; that by the headlight one could see fifty feet ahead. The facts thus testified to fairly tend to support the plaintiff's case.

Feitl v. Chicago City Ry. Co.

In Greenup v. Stoker, 3 Gilm. 202, 216, the court say: " When a question on a misdirection arises, the inquiry is whether it was a material point and affected the merits of the case. The court always make this inquiry, and they are bound, in the exercise of a sound discretion, to do so." The court also say that a new trial will not be granted or the judgment reversed, " provided the court can clearly see, by an inspection of the whole record, that justice has been done *and that the error complained of would not have affected the merits of the cause, or influenced the verdict of the jury.*" Ib. 216.

The court, certainly, cannot clearly see that Pett's testimony could not have affected the merits of the case, or influenced the verdict of the jury. He was the only witness who testified as to the condition of the apparatus for controlling the car, stating it was " in first-class condition," and the only witness who testified to just what he did when he discovered the buggy about fifty feet ahead of the car. He testified that he first rang the bell and threw the power off and drew up the brake immediately, as fast as possible; also that the buggy crossed the track in front of him, toward the south. It is manifest that this evidence went to the merits, and was of a character to influence the verdict. Elliott, in his work on Appellate Procedure, top p. 612, sec. 670, states the rule as follows : " Where the wrong ruling is not invited and the evidence admitted or excluded is material, the error will be available for the reversal of the judgment, unless the appellate tribunal can ascertain from the record without assuming the functions of the triers of the facts by weighing conflicting evidence, that the wrong ruling did not prejudice the substantial rights of the complaining party." Citing numerous cases in note 2.

In State v. Allen, 1 Hawks, 6 (N. C.), it is held that although sufficient evidence is before the jury to justify the verdict, yet, if improper evidence is admitted, after objection, a new trial will be granted, because the court cannot tell on whose testimony the jury relied.

In Marguand v. Webb, 16 John. 89, a witness, whose in-

terest it was to prove that the defendant was part owner of a vessel, was called by the plaintiff to prove that fact, and was allowed to testify. The court held that he was incompetent, by reason of his interest, and reversed the judgment, although two other witnesses testified as he did.

In Osgood v. Pres't, etc., of Manhattan Co., 3 Cowen, 612, the court, citing Marguand v. Webb, say: "It is well settled that if improper evidence be given, although it may be cumulative only, the judgment must be reversed, for we cannot say what effect such evidence may have had on the minds of the jury." Ib. 621. See, also, Weeks v. Lowerre, 8 Barb. 530; Daniel v. Nelson, 10 B. Monroe, 316; Rutzen v. Farr, 4 Adolph. & Ellis, 53; Wright v. Doe, dem. Tatham, 7 Ib. 313.

In my opinion the judgment should be reversed and the cause remanded for another trial.