### SAMUEL T. BRUSH

*v.*

### THE CITY OF CARBONDALE.

*Opinion filed October 23, 1907.*

1. PUBLIC POLICY—*public policy of the State is not a question of fact.* The public policy of the State is not to be determined by juries as a fact, but is to be determined by the courts from the constitution, legislation and judicial decisions and from the practice of the executive department.

2. APPEALS AND ERRORS—*when finding by Appellate Court that contract is against public policy is not conclusive.* A finding by the Appellate Court, in its judgment reversing, without remanding the cause, a judgment in a suit on a contract, to the effect that the contract sued upon was against public policy, is not conclusive upon the Supreme Court where the facts of the case were conceded, since such finding is but a conclusion of law.

3. CHAMPERTY AND MAINTENANCE—*when a contract is not void as in violation of statute relating to barratry and maintenance.* An agreement between a city and one of its resident citizens that the latter would pay all expenses, costs and attorney's fees if the city would appeal a test case which had been decided against it and which involved the validity of all saloon licenses in the city, and obtain a decision from the Supreme Court as to the validity of such licenses, is not void as in violation of sections 26 and 27 of the Criminal Code, relating to barratry and maintenance.

4. SAME—*what elements are essential to champertous contract.* To render a contract champertous there must be an undertaking by one person to defray the expenses, in whole or in part, of another's suit, and an agreement or promise on the part of the latter to divide with the former the proceeds of the litigation if it is successful.

5. SAME—*one taking advantage of champertous contract must pay for services.* Even if a contract is champertous, one party can not take the benefit of services rendered in his behalf and escape liability for what they are reasonably worth by setting up the illegality of the agreement.

6. CONTRACTS—*when citizen may recover from city money paid by him to appeal city's case.* An agreement between a city and a citizen that the latter will pay attorney's fees, costs and all expenses of an appeal to the Supreme Court in a case brought by the city to

test the validity of the saloon licenses of the city, provided the suit should be prosecuted to final determination, is not enforceable in so far as it limits the right of the city to control the appeal, since the law favors the settlement of suits; but ·if the citizen carries out his agreement and pays out his money in good faith, the city is liable to him for the amount in case it subsequently dismisses the appeal without his consent.    ·      ·

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. W. W. DUNCAN, Judge, presiding.

O. A. HARKER, (W. P. LIGHTFOOT, and GEORGE M. HARKER, of counsel,) for appellant:

There are two essential elements .in every champertous agreement: First, there must be an undertaking by one person to defray the expenses, in whole or in part, of another's suit; and second, a promise on the part of the latter ·to divide with the former the proceeds of the litigation in the event it proves successful. *Torrence* v. *Shedd,* 112 Ill. 466; Blackstone's Com. book 4, p. 135; Chitty on Contracts, 745; 2 Parsons on Contracts, 766.

The agreement does not violate the statute concerning barratry and maintenance.. Barratry, in Illinois, consists of wickedly and willfully stirring ·up suits and quarrels between people of the State with the view of promoting strife and contention. Hurd's Stat. chap. 38, sec. 26.

Maintenance consists of officiously intermeddling in a suit at common law or in chancery by a person in nowise interested, by maintaining or assisting either party to the litigation, with money or otherwise, to prosecute or defend the suit, with a view to promote litigation. Hurd's Stat. chap. 38, sec. 27.

Any citizen may lawfully contribute to the expense of a public prosecution, and the act will not subject him to the charge of maintenance. *Commonwealth* v. *Dupuy,* Brightly,

44; 5 Am. & Eng. Ency. of Law, 828; *Gilman* v. *Jones,* 87 Ala. 691.

A plaintiff who has in part performed a special agreement and is prevented from further performance by the act of the defendant, may either sue for the breach and recover damages or abandon the contract altogether and recover in general *indebitatus assumpsit. Bannister* v. *Read,* 1 Gilm. 92; *Sanger* v. *Chicago,* 65 Ill. 506; *Guerdon* v. *Corbett,* 87 id. 272.

The right to compensation for services performed and money expended in conducting another's suit is not forfeited because the contract is champertous. *Holloway* v. *Lowe,* 1 Ala. 246; *Elliott* v. *McClelland,* 17 id. 206; *Rust* v. *Larue,* 4 Litt. 412; *Merritt* v. *Lambert,* 10 Paige, 352; *Stearns* v. *Felker,* 28 Wis. 594.

T. B. F. SMITH, City Attorney, and F. M. YOUNG-BLOOD, for appellee:

If a city is dissatisfied with the judgments of the trial court and the Appellate Court in a case, it is its duty, under the law, to prosecute an appeal at its own expense, and any contract made to induce it to prosecute such appeal on the condition that the party making the contract will pay all costs and expenses is illegal and void as being contrary to public policy, and cannot be enforced against the city, nor can any liability arise to refund money to the party making such contract. *Randolph County* v. *Jones,* Breese, 237.

None of the money sought to be recovered in this suit was paid out by the appellant at the request of appellee, as is clearly shown by all the evidence, but was the voluntary act of appellant and paid at his own request and for his own use, and therefore cannot be recovered back from the city. *Carson* v. *Clark,* 1 Scam. 113.

One man cannot by his own voluntary act make himself the creditor of another. *Dedman* v. *Williams,* 1 Scam. 154.

Before the appellant can maintain an action for money paid for the use of defendant he must aver and prove that the money was paid at the request of defendant. There being no such averment in plaintiff's declaration as amended, plaintiff cannot maintain this action. *Allen* v. *Breusing,* 32 Ill. 505.

If the contract shown in the evidence and relied upon by appellant was illegal and void or was champertous then no recovery can be had, though it was *bona fide* on the part of both parties. *Loan Society* v. *Fritz,* 186 Ill. 118; *Strawboard Co.* v. *Strawboard Co.* 65 Ill. App. 502.

A contract whereby a client is prohibited from settling or dismissing his suit is void. *Railroad Co.* v. *Crapeke,* 82 Ill. App. 168; *Railway Co.* v. *Ackley,* 171 Ill. 100.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In January, 1902, several suits were begun by the city of Carbondale in justice's court against James W. Wade, a saloon-keeper, and others engaged in the same occupation, charging them with selling intoxicating liquors within said city without a license. There had been a city election held on September 24, 1901, at which the question of licensing the sale of liquor was in issue, and those who were opposed to the traffic prevailed. An ordinance was passed forbidding the sale of liquor, which took effect December 24, 1901, and the prosecutions were for violations of that ordinance. The defendants contended that the sales were legal under licenses previously granted, and the city claimed that the licenses had been revoked by the passage of the ordinance. Several cases were tried but no convictions were had, and finally the city attorney and the attorney for the defendants agreed to make the case of *City of Carbondale* v. *Wade* a test case for the purpose of settling the question. In pursuance of that agreement a judgment was entered in the justice's court against the city in favor of Wade and an

appeal was taken to the circuit court of Jackson county. The case was tried in the circuit court and resulted in a judgment against the city. The appellant, Samuel T. Brush, who was a resident and business man of the city and had resided there fifty-three years, had been interested in the prosecution as a citizen and had employed counsel to assist the city attorney before the justice and in the circuit court. He urged the city council to take an appeal to the Appellate Court, and agreed that if the city would take the appeal he would pay all the expenses that might be incurred on behalf of the city in the appeal, no matter how the case might be decided. The city council accepted the proposition and an appeal was taken to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed. Appellant again appeared before the city council and urged that a further appeal should be taken to this court. Roy Spiller, the city attorney, was then claiming an attorney's fee of $500 against the city for services rendered in the prosecution, which the city council was disinclined to pay, and they were not disposed to go further with the case. Appellant offered to pay the $500 to Spiller and all the costs and expenses from the beginning of the prosecution, and that the city should not be at any expense at all, if the city would appeal and he should be permitted to carry the suit to a final hearing in this court. The city council thereupon passed a resolution authorizing the city attorney to appeal from the judgment of the Appellate Court to this court provided the city should be at no expense whatever, including all the costs from the beginning of the suit in the justice's court to a final determination of the case. The agreement was that the appellant should be allowed to prosecute the suit to a final determination in this court, which would settle the legal question involved concerning the validity of the licenses, and was to pay all the expenses. The appeal was perfected. Appellant paid the fee of $500 to Spiller and also employed additional counsel

to whom he paid a fee of $500, and he paid for printing abstracts and briefs and other expenses, which, with attorneys' fees, amounted in the aggregate to $1121.35. Abstracts and briefs were filed, but before the case was reached for hearing the city council passed a resolution directing the city attorney to dismiss the appeal, contrary to the agreement. The appeal was dismissed and the case came to an end without any final decision by this court. The contract. having been abandoned and brought to an end by the action of appellee without the consent of appellant, he brought this suit in assumpsit to recover from appellee the amount of his expenditures in pursuance of the agreement. A jury having been waived the cause was tried by the court, and there was a judgment for appellant for the amount of his expenditures. Appellee appealed to the Appellate Court for the Fourth District, and that court reversed the judgment without remanding the cause, and incorporated in the judgment of reversal what the court termed a finding of facts, as follows: "We find as a fact that the contract alleged in the declaration was contrary to public policy and void, and that there was no valid, binding agreement, expressed or implied, as alleged in the declaration." The appellant has brought the record here by appeal from the Appellate Court.

Section 87 of the Practice act provides that if any final determination of any cause shall be made by the Appellate Court as a result, wholly or in part, of the finding of the facts concerning the matter in controversy different from the finding of the court from which such cause was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree the facts as found, and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause. The view of the Appellate Court seems to have been that the question whether the contract alleged in the declaration was contrary to public policy and void was one of fact. But that is not so. The facts from

which the question whether the contract was contrary to public policy must be decided were conceded and not in dispute, and the question was one of law, to be determined by the court. The public policy of the State is not to be determined by juries as a fact, but is to be determined by the courts from the constitution, legislation, judicial decisions, the practice of the executive department, and the opinion of the court whether the contract under consideration is of a nature injurious to the public welfare. (*Bell* v. *Farwell,* 176 Ill. 489; *Harding* v. *American Glucose Co.* 182 id. 551; 9 Cyc. 483; 15 Am. & Eng. Ency. of Law,—2d ed.—934.) The facts being conceded, the finding incorporated in the judgment that the contract was contrary to public policy and void, and that therefore there was no valid, binding agreement, expressed or implied, was nothing else but a conclusion of law. The judgment of the Appellate Court cannot be sustained upon the ground that there was a finding as to any question of fact binding upon this court which would justify the reversal.

If the judgment of the Appellate Court can be sustained at all, it must be upon the ground that the action was not maintainable as a matter of law, and it appears from the opinion of the Appellate Court, as well as the supposed finding of facts, that such was the conclusion of that court. That is also the position of counsel for appellee, who do not contend that the facts were controverted or that the trial court erred in its conclusion as to any matter of fact, but insist that appellee had no cause of action for several reasons. One of the reasons advanced is, that the contract sued upon is void under both sections 26 and 27 of division 1 of the Criminal Code, relating to barratry and maintenance. Section 26 provides that if any person shall wickedly and willfully excite or stir up suits or quarrels between the people of this State, either at law or otherwise, with a view to promote strife and contention, he shall be deemed guilty of common barratry and shall be punished as therein pro-

vided. The common law offense of maintenance has been abolished by our statute, (*Newkirk* v. *Cone,* 18 Ill. 449,) and section 27 defines that offense by providing that if any person shall officiously intermeddle in any suit at common law or chancery that in nowise belongs to or concerns such person, by maintaining or assisting either party, with money or otherwise, to prosecute or defend such suit with a view to promote litigation, he shall be deemed guilty of maintenance, and upon conviction thereof shall be fined and punished as in cases of common barratry. In this case there is no semblance of a violation of either of those sections. Appellant was not engaged in exciting or stirring up any suit or quarrel between the people of this State with a view to promote strife or contention. Neither did he officiously intermeddle in any suit that in nowise belonged to or concerned him, by maintaining or assisting any person, with money or otherwise, to prosecute or defend such suit with a view to promote litigation. The subject of the litigation was one that was of interest to all the citizens of the city of Carbondale, and the fact that appellant was willing to contribute of his money to have the case presented to this court, which, alone, had authority to finally decide the legal question involved, was neither a violation of the law nor in any way to his discredit. It may be that the Appellate Court, in considering the propriety of his action, was influenced to some extent by a mistake of fact, since it is stated in the opinion of that court that appellant was not even a resident of Carbondale, and therefore could not be, personally or individually, affected by the city ordinance, and had no right or voice, except as a moralist, in the making or enforcement of the city ordinances. Appellant testified that he was a resident of Carbondale and had lived there about fifty-three years, and was engaged in business there. There was no contradiction of that testimony, nor is there any claim by counsel for appellee that appellant did not have any immediate interest in the subject of the litigation as a

citizen. If Wade and others were selling liquor in the city of Carbondale without legal licenses they were guilty of a criminal offense, and there is nothing in the record to justify any inference except that appellant's object was to restrain the selling of liquor within legal limits. It would be just as reasonable to say that the employment of counsel to assist a State's attorney in a criminal prosecution with no other intent than to see that the law is enforced and vindicated would render a person guilty of officiously intermeddling with a suit that did not concern him, or with stirring up suits or quarrels between the people of the State with a view to promote strife and contention, as to make that charge against appellant.

Counsel next say that appellant was guilty of champerty, and at the same time concede that one essential element of every champertous agreement was wholly wanting. They say that if appellee had not dismissed its appeal and this court had reversed the judgments of the Appellate and circuit courts the contract was champertous, although there was no agreement on the part of the city to divide the proceeds of the prosecution with appellant. They correctly state the rule that there are two essential elements in every champertous agreement: First, there must be an undertaking by one person to defray the expenses, in whole or in part, of another's suit; second, an agreement or promise on the part of the latter to divide with the former the proceeds of the litigation in the event the prosecution was successful. That is the law, (*Torrence* v. *Shedd,* 112 Ill. 466,) and there was no agreement for any division of any sum which the city might recover in its prosecution against Wade. Even if the contract had been champertous and void, it does not necessarily follow that no rights could grow up in the litigation which it concerned. If a contract is champertous and void, an attorney may recover from his client for services rendered in connection with the action in the same manner as if the champertous agreement had never existed. (6 Cyc.

880; 5 Am. & Eng. Ency. of Law,—2d ed.—828.) The other party cannot take the benefit of services rendered in his behalf and escape liability for what they are reasonably worth on the ground that his agreement was illegal.  In *Stearns* v. *Felker,* 28 Wis. 594, the court said: "There is almost or quite an unbroken line of authorities which hold that although attorney and client may have entered into an agreement in respect to the compensation for the services of the former which was void for champerty, yet the attorney does not thereby forfeit his right to full compensation for his services nor the client his right to the fruits of the litigation after paying for such services what the same are reasonably worth.  Such is undoubtedly the law, and it harmonizes with the plainest principles of justice."  It would be absurd to say that the agreement in this case was one the tendency of which was to corrupt and mislead or improperly influence the judgment of a public official in the performance of his duties, or that the payment of the money by the appellant or the prosecution of the appeal for the purpose of enforcing the law as he believed it to exist was contrary to public policy.

Again, counsel urge that the action could not be maintained because the contract was that the appellant was to prosecute the appeal at his own expense; that whatever the judgment of this court might be, the city was to be liable for no costs or expenses, and there was no agreement on the part of the city to reimburse the appellant.  They state one side of the agreement, but the other side was that the appeal was to be taken and was to be prosecuted in this court to a final determination, so that the legal question involved should be finally and conclusively determined.  Appellee did not perform its part of the agreement but prevented the final determination, which was the consideration for appellant's agreement, by dismissing its appeal.  The moneys were paid out by appellant in good faith, in pursuance of a contract with appellee by which there should be a decision of a legal

question in which appellant had an immediate interest as a citizen of the city of Carbondale. Appellant lost all that he contracted for and for which he paid his money by the act of appellee, and ordinarily if one party to a contract pays out money or performs services in pursuance of it and the contract is abandoned or ended by the other party, he may recover what he has paid out or the value of the services which he has performed. It cannot be said that appellant has attempted to make himself a creditor of appellee by his own voluntary act. He was not to be reimbursed if the contract was carried out, but to say that appellee could put an end to the contract and thereby deprive appellant not only of what he bargained for but also of the money which he paid out in good faith, would be against common justice.

There was a part of the contract which could not be enforced. That part was the agreement of appellee that appellant might prosecute the suit to a final determination, and that could not be enforced because the law favors settlements, and such agreements prevent a party from settling his controversy and discontinuing his suit. (*North Chicago Street Railroad Co.* v. *Ackley,* 171 Ill. 100.) While a contract of that character may be spoken of as void, it is not so in the sense that no rights can grow up under it, but it is void in the sense that the party agreeing not to discontinue his suit is not bound by such agreement and it cannot be enforced. This contract, if executed on both sides, would confer actual rights to the same extent as any legal contract, and if the appeal had been prosecuted to a final determination the appellant could not have relieved himself from the obligation to pay the costs and expenses by saying the agreement was void. Appellant is not seeking to enforce the contract or to recover damages for a violation of it. That appellee had a right to withdraw from the agreement and dismiss its appeal is not disputed, but appellee entered into the engagement and appellant paid out his money in good faith in its behalf, and the question is whether he had

a right to recover the moneys so paid upon the abandonment by appellee of the contract. The contract was not enforcible so far as it limited the right of appellee to control the appeal, but it neither had for its object a violation of the law nor any act prohibited by statute, and to sustain the defense attempted would in our opinion neither advance public policy nor accomplish justice.

The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment reversed.*