WATKINS, TRUSTEE, ET AL. *v.* SEDBERRY ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 248. Argued January 19, 1923.—Decided April 9, 1923.

1. The amount of attorney's fees to be charged against a bankrupt estate as an expense of administration is subject to examination and approval by the Court (Bankruptcy Act, § 62a); the trustee is not authorized to dispose of property of the estate by contract with an attorney on a contingent basis. P. 574.

2. A contract by which an attorney undertook to recover property of a bankrupt estate, indemnifying the trustee against damages and expenses, and the trustee agreed that any property so recovered should be first chargeable with the expenses incurred by the attorney and the balance be then equally divided between them,—*held* grossly excessive, champertous and invalid. P. 575.

3. The contract here involved is not *malum in se*, and the attorney is not debarred from recovering on *quantum meruit*. P. 576.

4. A bankrupt who resisted recovery of property belonging to the bankrupt estate, has no standing to oppose payment of a reasonable fee to the attorney who recovered the property, upon the ground that a champertous contract existed between the attorney and the trustee. *Id.*

5. Where the purpose and result of a suit brought by a trustee in bankruptcy in a state court are to remove a cloud from property of the bankrupt and vest it all in the trustee (Bankruptcy Act, § 70), and not merely to assert his right as a creditor to set aside a fraudulent conveyance under the state law for the satisfaction of debts, (*Id.*, §§ 67e, 70e), the attorney's allowance for service in the litigation is chargeable against a surplus of the property remaining after paying all the bankrupt's debts, and not against the debts, as it might be under the state law if the suit were of the latter character. P. 577.

6. Where property vested in a trustee in bankruptcy, through litigation, as part of the bankrupt's assets exceeds in value the amount of the bankrupt's debts, the amount of the recovery, for the purpose of fixing the attorney's fee, is not the whole property, but the sum of the debts and attorney's fee and expenses. P. 580.

275 Fed. 894, reversed.

CERTIORARI to an order of the Circuit Court of Appeals revising an order of the District Court in bankruptcy fixing attorney's fees.

*Mr. C. C. Calhoun*, with whom *Mr. John R. Aust, Mr. Clarence T. Boyd, Mr. Jordan Stokes, Jr.,* and *Mr. Jos. R. West* were on the brief, for petitioners.

*Mr. Norman Farrell*, with whom *Mr. Charles S. Lawrence* was on the brief, for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This case involves fees and expenses of an attorney for a trustee in bankruptcy. . Claims therefor are made on a written contract between the trustee and the attorney, Jordan Stokes, Jr.[1] The amount claimed for fees is about $49,000 [2] and for expenses $1,127.28. The debts, existing at the time of the filing of the petition in bankruptcy and since proved and allowed, amount to $21,000 with interest. The services were rendered in the prosecution of a suit brought by the trustee in the State Chancery Court against the respondents, the bankrupt and his family, to recover a farm and personal property thereon. The suit was successful, and the value of the property is $99,743.01. After the recovery of that judgment, the respondents petitioned in the bankruptcy case for an order, fixing the amount of indebtedness of the bankrupt, as finally allowed, and the expenses of administration, including a reasonable fee for the attorney of the trustee to the end that all debts and expenses might be fully paid out of money raised by mortgage of the land so recovered, and that the bankruptcy proceedings be dismissed. After hearing, the referee decided that the trustee had no authority to contract in advance for the amount to be paid for legal services, and that the attorney be allowed a fee of $10,000 and $750 for expenses, and that both items be paid out of the property so recovered. The petitioners and re-

---

[1] The attorneys interested are the petitioners, Jordan Stokes, Jr., Joseph R. West, and R. H. Crockett. The contract of employment was between the trustee and Stokes. As authorized by the contract, Stokes employed West and Crockett as assistants. There is no matter here in dispute between the attorneys. The word " attorney " is used in the opinion to include all the petitioners other than Watkins, the trustee.

[2] All figures stated in the opinion are approximate and intended only to identify the sum involved, not to fix it.

spondents both petitioned for review. The District Court held that the contract was invalid; allowed a fee of $7,500 and $750 expenses, and directed that these sums be paid as a part of the expenses of administration of the bankrupt estate before return of surplus to respondents. Both sides petitioned to revise and also appealed to the Circuit Court of Appeals. That court (275 Fed. 894) dismissed the appeals and dealt only with the petitions to revise. It held that the attorney's fee should be paid out of the debts—i. e., should be borne by the creditors—and not out of the surplus remaining after the payment of debts in full. The award of the District Judge of $7,500 attorney's fees was vacated on the ground that the amount of the recovery in the Chancery Court, which was deemed a material element to be considered in fixing the fee, was in the lower court erroneously taken to be $29,000, instead of $21,500, and the District Judge was left at liberty to use his discretion in again fixing the amount " with due regard to the modified character of the recovery and the change in the source from which payment must be made."

The validity of the contract between the trustee and attorney is first to be considered. The bankrupt filed a voluntary petition in bankruptcy, August 24, 1917. He scheduled unsecured debts amounting to $18,260. Many years before any of these debts were contracted, he purchased a farm and caused the deed to be made to his wife as " trustee " for the use and benefit of herself, her husband and their children; on the advice of counsel, he did not schedule it; and he did not schedule any property applicable to the payment of such debts. The trustee made a preliminary investigation and caused the bankrupt and his family to be examined. The attorney, Mr. Stokes, who had for collection two of the largest claims against the bankrupt, acted for the trustee in these matters. On October 24, 1917, the trustee and attorney made the contract; the attorney agreed to institute such suits as might

be necessary and proceed generally to recover property that he might be able to locate belonging to the bankrupt; he agreed to bear the necessary expenses and to indemnify the trustee against all damages and expenses growing out of his employment; it was provided that any property recovered should be first chargeable with the amounts that the attorney expended in prosecuting the claims and that the balance should be divided equally between the trustee and the attorney. The contract was made without notice to or the authority of the creditors, and without the knowledge· of the respondents. On the same day, the trustee presented a petition to the referee, showing that the bankrupt scheduled no property and that none had come to the trustee; that after investigation he believed that a large amount might be recovered for the creditors, and that the attorney was willing to bear all expenses and undertake the matter. The referee made an order authorizing the trustee to enter into a contract of employment with the attorney " on a contingent basis ", and providing that the attorney should be personally responsible for and pay all expenses incurred in the prosecution of any suits. Neither the petition nor the order disclosed what proportion of the property was agreed to be given to the attorney for his services. The probable value of the property proposed to be recovered was not shown. The amount or kind of professional services required could not be known in advance. The amount of attorney's fees to be charged against the estate as an expense of administration is subject to the examination and approval of the court. § 62a, Bankruptcy Act. *In re Stotts,* 93 Fed. 438, 439; *Davidson & Co.* v. *Friedman,* 140 Fed. 853; *Page* v. *Rogers,* 149 Fed. 194, 195. The trustee was not authorized so to dispose of property of the estate. The amount claimed under the contract is grossly excessive. The contract is invalid.

The attorney claims compensation on *quantum meruit,* if recovery under the contract is denied. The respondents

contend that the contract is champertous and that the attorney is not entitled to any compensation.

The essential provisions of the contract have been stated. There is no ground for the claim that the attorney had an interest in the proposed litigation that would make it proper for him to pay the expenses of the suit and indemnify the trustee. It is true, as contended by the petitioners, that the severity of the old rule of the English common law against champerty, regarding it as an offense *malum in se,* has been somewhat relaxed. *Burnes* v. *Scott,* 117 U. S. 582, 589; *Roberts* v. *Cooper,* 20 How. 467, 484; *Byrne* v. *Kansas City, &c. R. R. Co.* 55 Fed. 44, 47; *Courtright* v. *Burnes,* 13 Fed. 317, 320.

No statute of Tennessee authorizes such a contract. C. 66, Acts of 1821 (Shannon's Code, §§ 3171-3184) denounced champerty and required the dismissal of suits, whenever it was made to appear they were prosecuted pursuant to champertous arrangements. *Heaton* v. *Dennis,* 103 Tenn. 155, 160; *Robertson* v. *Cayard,* 111 Tenn. 356, 367; *Staub* v. *Sewanee Coal Co.,* 140 Tenn. 505, 508. By c. 173, Acts of 1899, this requirement was eliminated; but no decision of the Supreme Court of that State has been called to our attention which would sustain this contract. It is champertous under the rule generally prevailing in this country. *Peck* v. *Heurich,* 167 U. S. 624, 630, and cases there cited; *Jones* v. *Pettingill,* 245 Fed. 269, 275; *Casserleigh* v. *Wood,* 119 Fed. 308, 312-315; *Stearns* v. *Felker,* 28 Wis. 594, 596; *Butler* v. *Legro,* 62 N. H. 350; *Huber* v. *Johnson,* 68 Minn. 74; *Moreland* v. *Devenney,* 72 Kan. 471.

As to the attorney's right to compensation on *quantum meruit:* It was the duty of the trustee to employ counsel to bring suit to recover the property belonging to the bankrupt. The fact that the contract between him and his attorney was champertous, even if its terms had been known, could not have been interposed by respondents to

defeat the trustee's suit. *Burnes* v. *Scott, supra; Staub* v. *Sewanee Coal Co., supra,* 509; *Robertson* v. *Cayard, supra,* 365; *Boone* v. *Chiles,* 10 Pet. 177, 219. They should have handed over the property to the trustee without suit because, as it was adjudged in that case, the bankrupt was the real owner. After judgment went against them in the Chancery Court, they petitioned the bankruptcy court to fix a reasonable fee for the trustee's attorney. They did not then know of the existence of the contract, and, while they may successfully oppose payment of the amount therein provided for, they have no standing now to object to a reasonable fee. The attorney rendered valuable services in the prosecution of a proper and legitimate suit. Through his efforts there was recovered more than enough to pay expenses and debts in full. The trustee joins the attorney in asking that a reasonable fee be allowed. The making of the contract was not *malum in se.* The attorney's right to fair and reasonable compensation is not forfeited. *Brush* v. *City of Carbondale,* 229 Ill. 144, 152; *Stearns* v. *Felker,* 28 Wis. 594, 597; *In re Snyder,* 190 N. Y. 66, 75; *Gammons* v. *Johnson,* 69 Minn. 488; *Rust* v. *Larue,* 4 Litt. (Ky.) 412, 428; *Elliott* v. *McClelland,* 17 Ala. 206, 209; *Holloway* v. *Lowe,* 1 Ala. 246, 248.

The respondents cite cases which hold that champerty defeats the attorney's right to recover on *quantum meruit,*[3] but we think that they are not applicable to the facts of this case hereinbefore stated.

The District Court held that the attorney's fee should be paid out of the surplus as an expense of administration. It was decided that the suit was not brought under or to enforce the right conferred by the Tennessee stat-

---

[3] *Roller* v. *Murray,* 112 Va. 780; *Moreland* v. *Devenney, supra; Butler* v. *Legro, supra; Gammons* v. *Gulbranson,* 78 Minn. 21; *Taylor* v. *Perkins,* 171 Mo. App. 246.

utes (Shannon's Code, §§ 6097, 6099),[4] but was prosecuted under the provisions of § 70 of the Bankruptcy Act, and especially under subsections a(4)[5] and (5), and that under these provisions the trustee was entitled to recover the entire property for the purpose of administration in the bankruptcy court as general assets of the estate, citing *Globe Bank* v. *Martin,* 236 U. S. 288, 304; *Bunch* v. *Smith,* 116 Tenn, 201, 216. The Circuit Court of Appeals held that the payment should be made out of the amount of debts, and thus be borne by the creditors. Its decision went upon the ground that under the laws of Tennessee (Shannon's Code, §§ 6097, 6099) where a conveyance is set aside as fraudulent to creditors, counsel fees must be paid out of the debts recovered and cannot be charged against the surplus; that the suit was brought under §§ 67e[6] and 70e of the Bankruptcy Act,

---

[4] 6097.—"Any creditor, without first having obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt." (1851–52, c. 365, § 10.)

6099.—"If the bill is filed by one creditor for himself and others, the other creditors may make themselves parties at any time before final decree, by petition, agreeing to join in the bonds required in the case, and giving bond, with good security, to the original complainant, and in a sufficient penalty, to pay their proportional part of the recovery on such bonds." (*Ib.*)

[5] "Sec. 70. Title to Property.—a The trustee . . . shall . . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, . . . to all . . . (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: . . ."

[6] Section 67e confers upon state courts jurisdiction of suits by the trustee in bankruptcy to recover property fraudulently conveyed by the bankrupt within four months prior to the filing of the petition.

conferring upon the trustee the rights of creditors under the state statute, and that where a bankrupt fraudulently conveys property more than four months before bankruptcy, the attorney's fee must be paid out of the debts recovered, and cannot be charged against the surplus, and held the recovery of the trustee in the Chancery Court so limited.

That ruling cannot be sustained. The final decree in the suit in the Chancery Court adjudged and determined that the real title to the land and personal property thereon was and had been in the bankrupt from January 1, 1902, and that upon his bankruptcy it vested in the trustee. It is urged that the decree should be read in the light of the purposes of the suit and the laws of Tennessee, and should be deemed to be a judgment only for the amount of the debts. The purposes of the suit are disclosed by the complaint which, among other things, alleged that on January 1, 1902, the bankrupt procured a conveyance of the farm to be made by one Zellner to the bankrupt's wife, " Z. C. Sedberry, Trustee "; that there is a provision in the deed to the effect that she was to hold the land for the use and benefit of herself, her husband and their children; that she did not pay any part of the purchase price; that the bankrupt at all times was the owner thereof; that the wife and children were made parties in order to remove all clouds from the title; and the complaint, among other things, prayed judgment

Section 70e. " The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy . . . and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

that the trustee be declared the owner of the property. At the time of the entry of judgment granting relief as prayed, it was stipulated that none of the parties would prosecute an appeal or seek any revision of it. The decree following the allegations and prayer vested in the trustee the property in question, and he holds it for the purposes of administration of the bankrupt estate. It is true that it was alleged that the bankrupt procured the farm to be conveyed on January 1, 1902, to his wife as trustee for the purpose of defrauding his existing and subsequent creditors, and that the complaint contains allegations that would be suitable in an action by creditors to set aside a fraudulent conveyance under the state statute, but these constitute no ground for cutting down the terms of the decree or for limiting the recovery to the amount of the debts, leaving the creditors to pay the attorney's fee for services made necessary by the respondent's failure to turn over to the trustee the property of the bankrupt. The value of the property affected by the decree being in excess of the amount required, the recovery must be deemed to be sufficient to pay all expenses, including a reasonable attorney's fee and the debts in full.

The evidence is sufficient to support the allowance made in the District Court of $7,500 as reasonable compensation for the services of the attorney for the trustee. The debts, plus the attorney's fee and expenses, amount to $29,000, and, in fixing the attorney's fee, that amount is properly to be regarded as the recovery in the chancery suit.

The attorney claims $1,127.28 for expenses. The referee held that the statement was not properly itemized, and allowed $750 as a lump sum and gave him opportunity, if unwilling to accept that amount, to furnish a statement properly setting forth the claim in detail. No further statement of the claim was made. The attorney

failed to establish his right to any greater sum on account of expenses.

*The decree of the Circuit Court of Appeals is reversed, and that of the District Court affirmed.*