In the Matter of the Estate of RALPH F. GILMAN, Deceased.

MABEL R. HUNNEWELL, as Administratrix, Appellant; LESTER C. GILMAN, Respondent.

(Argued May 27, 1929; decided July 11, 1929.)

*David Joyce* for appellant. It is perfectly proper for an attorney to take a case and advance the necessary expense, so long as this is done on a voluntary basis and not upon a basis to induce the client to retain him, or to induce the client to begin a proceeding. (*Fowler* v. *Callan*, 102 N. Y. 395; *Ransom* v. *Cutting*, 188 N. Y. 447; *Ramsey* v. *Miller*, 202 N. Y. 76.) The decision of the Surrogate that the decree on the first accounting was a bar to any further allowance on the second accounting cannot be sustained. (Heaton on Surrogates, 91; *Matter of Knapp*, 85 N. Y. 284; *Matter of Ross*, 123 App. Div. 74; *Matter of Wood*, 170 App. Div. 533; *Matter of Regan*, 167 N. Y. 338; *Harwood* v. *La Grange*, 137 N. Y. 540; *Kennedy* v. *Steele*, 35 Misc. Rep. 105.)

*John J. Crawford* for respondent. The contract of the attorneys with the administratrix is champertous and void. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443; *Stedman* v. *Hartman*, 74 App. Div. 126.) The contract of the appellant to pay her attorneys one-third of what should be realized out of the estate of Theophilus Gilman was her personal obligation and not binding upon the estate. (*Parker* v. *Day*, 155 N. Y. 383; *Matter*

*of Meng,* 188 App. Div. 69.) All the Surrogate had power to determine was that the sums paid to the attorney were the fair and reasonable value of his services to the estate. (*Matter of Atterbury,* 222 N. Y. 355; *Matter of Meng,* 188 App. Div. 69; *Bendernagle* v. *Cocks,* 19 Wend. 207; *O'Dougherty* v. *Remington Paper Co.,* 81 N. Y. 476; *Secor* v. *Sturgis,* 16 N. Y. 554; *Perry* v. *Dickerson,* 85 N. Y. 347.)

CARDOZO, Ch. J. A payment by an administratrix to an attorney for services beneficial to the estate has been disallowed on her accounting.

Ralph F. Gilman died intestate in 1909, leaving a father, Theophilus Gilman, and a widow, Mabel R. Gilman (now Mabel R. Hunnewell), who became his administratrix.

Theophilus, the father, died in 1912, leaving the bulk of his estate to his two sons, Ralph F. Gilman, who died before him, and Lester Gilman, who survived him. The will provided in effect that the residuary estate should be held in trust for Ralph and Lester, subject to certain charges or annuities, until Ralph, who was the younger, should attain the age of thirty years, that it should thereupon be divided between the two sons equally, that if Ralph died under thirty, the division should take place when Lester became thirty, and that if either died before division, the share of the one so dying should go to his executors and administrators.

A question arose whether the share bequeathed to Ralph lapsed upon his death before his father at the age of twenty-six, or passed to Mrs. Gilman, the administratrix, to be held, half for herself as widow and half for Lester, the surviving next of kin. Mrs. Gilman retained an attorney, Mr. Joyce, " to begin all necessary actions and take all necessary proceedings " to enforce her rights and interests individually and as administratrix in the estate of the father, signing an agreement by which she undertook to pay as compensation " one-third of the

amount realized out of the said estate " (*i. e.*, the estate of Theophilus Gilman), the attorney to " bear all the necessary expenses." Under this retainer, Mr. Joyce established the contention of his client that the legacy had not lapsed, carrying the case twice to this court (*Matter of Gilman*, 214 N. Y. 666; 220 N. Y. 659), with the result that she became entitled as administratrix of Ralph·F. Gilman to the sum of $82,276. Of this total there was paid to her in 1916 the sum of $62,954, and in 1927 the sum of $19,321.

When the payment of $62,954 was made in 1916, Mrs. Gilman, as administratrix, paid one-third, or $20,984, to her attorney, and thereafter filed an account in which she set forth the payment, describing it as one for " legal services in proceeding to establish claim of legacy under last will and testament of Theophilus Gilman as per agreement with David Joyce, to wit, one-third of amount of legacy, $20,984.93." An objection to this item was filed by Lester Gilman, but the objection was overruled by the Surrogate, and the account confirmed. When the additional sum of $19,321 was paid to the administratrix in 1927, she paid one-third, or $6,440, to her attorney, and filed a new account, the present one, setting forth the payment, to which objection was again filed by Lester Gilman as one interested in the estate. The ground stated in the objection was that the earlier payment was in full for all services then rendered. The Surrogate sustained the objection, and surcharged the account accordingly. Upon appeal to the Appellate Division, the decree was unanimously affirmed, four members of the court stating in a memorandum that the agreement relied upon was " invalid," and one member concurring in the result upon the ground that " the prior allowance under the agreement precluded any further allowance." The case is here by permission of this court.

We find nothing in the decree upon the earlier accounting that adjudicates the question in controversy now.

The administratrix was then justifying a payment of a stated sum, one-third of the legacy received up to that time. In claiming credit for this payment, she did so with the statement that she had made it under an agreement for a contingent fee of one-third of the value of any benefits received. There was no statement that the payment was in full, and no decree to that effect. On the contrary, there was plain notice in the terms of the disclosed retainer that the payment was on account, and that new payments would be made if new installments were collected. The decree did not decide that such payments, if made, might be charged against the estate. It did not decide the contrary. At the moment of its entry the credit to be allowed to the administratrix could be no greater than the moneys then actually disbursed. Credit for future payments, if there were any, was perforce to wait upon the future.

The former decree being put aside as indecisive, we reach the merits of the controversy upon the record now before us. The respondent insists that the attorney was retained under a champertous agreement. Champertous we think it was. The attorney bound himself by the agreement to pay the expenses of proceedings to enforce his client's rights. The law is settled that such a promise runs counter to the statute (*Coughlin* v. *N. Y. C. R. R. Co.*, 71 N. Y. 443; *Matter of Clark*, 184 N. Y. 222, 227; *Matter of Speranza*, 186 N. Y. 280, 284; *McCoy* v. *Gas Engine & P. Co.*, 152 App. Div. 642; 208 N. Y. 631; *Watkins* v. *Sedberry*, 261 U. S. 571, 577; *Peck* v. *Heurich*, 167 U. S. 624, 630; *Brush* v. *City of Carbondale*, 229 Ill. 144; *Roller* v. *Murray*, 107 Va. 527, 528, 531; *S. C.*, 112 Va. 780). We did not hold to the contrary in *Fowler* v. *Callan* (102 N. Y. 395) or in *Ransom* v. *Cutting* (188 N. Y. 447). The point of those decisions was that the retainer of the attorney was not to attack, but to defend. He was not inciting to litigation. He was protecting the interests of a client against assaults begun or threatened.

Here what was promised and exacted was affirmative and hostile. The law does not say that an attorney is guilty of misconduct by the voluntary advance of the expenses of a lawsuit to a client too poor to pay the cost of justice. It does say that there is misconduct if he makes or promises the payment to discharge an obligation assumed in return for his retainer. He shall not " by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy for the recovery thereof " (Penal Law, § 274, subd. 2).

The statute has its roots in a prohibition and a policy as ancient as our law. Much of the law of maintenance and champerty is of merely curious interest today, at least in this State, though it has still a flourishing life in lands across the seas ( *Neville* v. *London " Express " Newspaper, Ltd.,* [1919] A. C. 368; 8 Holdsworth, History of English Law, 399, 400; Winfield, History of Maintenance and Champerty, 35 L. Q. R. 50; Winfield, Neville v. London " Express " Newspaper, Ltd., 35 L. Q. R. 233). Even there, however, the maintenance inspired by charity or benevolence has been sharply set apart from maintenance for spite or envy or the promise or hope of gain. " It seems to be agreed, that anyone may lawfully give money to a poor man to enable him to carry on his suit " (1 Hawkins, Pleas of the Crown, ch. 27 (6), § 26, p. 460, quoted in *Neville* v. *London " Express " Newspaper, Ltd., supra,* at p. 379, and cf. pp. 383, 389; also 35 L. Q. R. at p. 235). What is feared and forbidden is the oppressive intermeddling of wealth or officialdom for publicity or profit. The statute is a reminder that remnants of the old distinctions abide with us today. There is to be no

barter of the privilege of prosecuting a cause for gain in exchange for the promise of the attorney to prosecute at his own expense.

The retainer being champertous, the question remains whether credit must be denied to the administratrix for payments made in good faith to the extent of the value of the services. This is not a proceeding by the attorney to compel payment by his client either personally or otherwise. This is a proceeding to determine whether the client, who has made the payment, must bear the loss herself. The contract, whether lawful or unlawful, was not binding upon the estate for any sum in excess of the reasonable value. The promisor as an individual might bind herself for more, but she could not go beyond that limit as to the assets in her keeping. Formerly, the rule was that in the absence of extraordinary conditions, an executor or administrator should pay out of his own funds the fees of his attorney, and then after paying them obtain indemnity or allowance upon the settlement of his accounts to the extent that the payments were found to be reasonable and necessary (*Jessup* v. *Smith*, 223 N. Y. 203, 207, 208). In 1914 the law was changed by permitting payment in the first instance out of the funds of the estate, subject always, however, to like restrictions as to amount (Surr. Ct. Act, § 222, formerly Code Civ. Pro. § 2692). Later, in 1923, the remedy was extended so as to permit the liquidation of such expenses in an independent proceeding, apart from an accounting, and at the instance of the attorney if the representative declined to move (Surr. Ct. Act, § 231-a; *Matter of Shipman*, 116 Misc. Rep. 405; 200 App. Div. 896; 234 N. Y. 499; Jessup-Redfield Surrogates' Courts, §§ 155, 156-a, 1173, 1174). The administratrix, therefore, was acting within her rights if she disbursed the moneys of the estate for reasonable and necessary expenses though in advance of her accounting. She took the risk, however, that a surcharge would follow if the expenses were disallowed as improper or excessive.

We think the payments are not to be condemned as unreasonable or unnecessary within the meaning of the statute because the services were rendered under a champertous retainer. Beneficial and even necessary to the estate they unquestionably were. There would have been no estate without them. We do not go into the question whether the attorney, discarding the agreement with its vitiating taint of champerty, might have maintained an action against the client for the reasonable value. As to this, conflicting decisions have been made by courts of high repute (Williston, Contracts, § 1713; *Butler* v. *Legro*, 62 N. H. 350; *Volger* v. *Ray*, 131 Mass. 439; *Roller* v. *Murray*, *supra*; *Willemin* v. *Bateson*, 63 Mich. 309; *Grell* v. *Levy*, 16 C. B. [N. S.] 73; *Merritt* v. *Lambert*, 10 Paige, 352; affd., *sub nom. Wallis* v. *Loubat*, 2 Denio, 607; contra, *Stearns* v. *Felker*, 28 Wis. 594; *Brush* v. *City of Carbondale*, *supra*; *Goodman* v. *Walker*, 30 Ala. 482; *Gammons* v. *Johnson*, 69 Minn. 488; *Barngrover* v. *Pettigrew*, 128 Iowa, 533). Distinctions may be necessary between cases where the vitiating element is separable or contingent (*Matter of Snyder*, 190 N. Y. 66) and cases where it goes to the essence of the service. We make no attempt at this time to draw the line of demarcation. The problem for us is narrower and simpler. We are to say whether an administratrix, unadvised of a defense, is to be charged upon her accounting with a devastavit of the assets for yielding in good faith to the demand of her attorney and paying him as upon a *quantum meruit* for work efficiently performed.

A recent case in the Supreme Court is apposite, if not controlling. The attorney for a trustee in bankruptcy conducted a litigation under a champertous agreement to bear the necessary expenses. A creditor learning of the champerty made objection to his fees. The court held that there might be an allowance for the reasonable value (*Watkins* v. *Sedberry*, 261 U. S. 571, 577). " The

making of the contract was not *malum in se.* The attorney's right to fair and reasonable compensation is not forfeited." Cases such as *Roller* v. *Murray* and *Butler* v. *Legro* (*supra*), though not expressly disapproved, were put aside as inapplicable because of differences in the facts. An order directing payment was accordingly upheld as a just and equitable incident to the administration of the estate.

We do not need to go so far to find support for the credit in controversy here. The question here, unlike the one in the Supreme Court, is not whether the attorney shall be paid, but whether the administratrix is chargeable with waste in paying him. The service that he gave being meritorious and necessary, the omission to take advantage of a technical defense should not defeat the credit unless the administratrix was negligent in failing to know of the defense and to act upon the knowledge (cf. *Speight* v. *Gaunt,* 9 A. C. 1, 4). Fault to that degree may not fairly be ascribed to her. The defense was at best a doubtful one, as is attested by the division in the cases, though defense it may be assumed to be. The mere acceptance of the money by the attorney, who was the general adviser as to the administration of the estate, was a tacit representation to his client that the payment was not unlawful. No objection on the ground of champerty had been made by the next of kin on the earlier accounting. We ought not to apply to a payment so made the strict rule that has been enforced at times where error has been made in the payment of a legacy, or even in the payment of a debt incurred, or believed to have been incurred, by a testator during life. In situations such as those, it has been the practice of the representatives, if uncertain, to seek the instructions of the court, and they pay the price of over-confidence (cf. 2 Williams, Executors, p. 1420; *National Trustees Co.* v. *Gen. Finance Co.,* [1905] A. C. 373). It is significant that

the rigor of that rule has been mitigated by the present statute so far as it applies to debts. The representative is now excused though the debt was unreal if he has paid it in good faith and on reasonable grounds (Surrogate's Court Act, § 210; *Matter of Taylor*, 251 N. Y. 257). The conclusion is the more plainly necessary where resort to the court for instructions is unusual, if permitted. Here the primary obligation had been assumed by the fiduciary personally, who, as between herself and the attorney, was paying her own debt (*O'Brien* v. *Jackson*, 167 N. Y. 31). She would be entitled to indemnity if she had made the payment out of her own funds, discharging in so doing what was reasonably conceived to be the obligation of her promise. The right to credit should be no less when she has paid from the estate.

In thus holding, we are not to be understood as indicating a belief that the sum fixed by the retainer must be accepted by the Surrogate as a sound estimate of value. Whether it should be accepted or rejected is for the trier of the facts. An administratrix or other fiduciary may not bind the estate by a promise to pay a fee beyond a reasonable sum (*Matter of Reisfeld*, 227 N. Y. 137, 139, 140). This is so whether compensation is unconditional or contingent. " The fee may be made contingent (*Lee* v. *Van Voorhis*, 78 Hun, 575; 145 N. Y. 603); its size may be increased because of the contingency; but none the less, the bargain must exhibit a measurable degree of providence in the adjustment of reward to service " (*Matter of Reisfeld, supra*). The trier of the facts must say whether these precepts were obeyed. If we turn to the record in *Matter of Gilman* (220 N. Y. 659), we shall find a nice question of testamentary construction, yet one narrow and specific and calling, it would seem, for no extraordinary research. The legacy, as we have seen, was considerable, over $80,000. There is room for difference of opinion whether a third was a fair proportion even on the footing of a payment contingent on

success.  The need for providence was the more obvious because in default of creditors one-half of the legacy after collection by the widow as administratrix, would go back to the same man who was charged with unlawfully withholding it.  The fairness of the payment must be adjudged in the light of these conditions.  Testimony by the attorney as to the extent and value of his services was offered upon the hearing before the Surrogate and erroneously excluded.  A new hearing becomes necessary to reinforce the scanty record.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed and a new hearing ordered, with costs to abide the event.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.