**J B P HOLDING CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

United States District Court
S. D. New York.
Sept. 17, 1958.

Jerome Kamerman, New York City, for petitioner David Kamerman.

Warren L. Schnur, New York City, for plaintiff.

DAWSON, District Judge.

This is an action brought by petitioner David Kamerman against J B P Holding Corporation (hereinafter referred to as J B P)for an order making an allowance of counsel fees to the petitioner under § 475 of the Judiciary Law of the State of New York. A cross motion has been filed by J B P directing petitioner to pay over a check made by the United States of America to the order of J B P for the sum of $7,822.23, together with interest from June 19, 1958.

Petitioner is an accountant, an attorney and a member of the Bar of the State of New York. He maintains an office in the City of New York. On or about October 22, 1956, J B P by Joseph Shapiro its president, retained petitioner as an attorney, to prosecute a claim for a tax refund against the United States of America. Petitioner prior thereto had served as the accountant for J B P. By a written agreement of retainer J B P consented to pay petitioner 50% of the total recovery.

This present action stems from the attorney-client relationship in the tax refund action. Kamerman, petitioner here, was attorney for the plaintiff in the original action.

Petitioner maintains that solely as a result of his efforts the tax refund action was settled for the total sum of $7,822.23, consisting of $6,054.49 in refund, plus $1,767.74 interest. The United States Government issued its check for this amount to petitioner, payable to the plaintiff, on June 19, 1958. Petitioner still has this check in his possession and claims that he is entitled to and has a lien in the sum of $3,911.11, for which payment was demanded and no part paid. Further, petitioner states that he has never received from plaintiff any compensation for his services in the tax refund action. He therefore requests that this Court declare a lien on the check he is holding and permit execution for the sum requested.

As a defense to this application, J B P maintains that this written agreement was submitted on petitioner's accountant stationery and therefore the retainer was entered into by petitioner as an accountant and not as an attorney. Accordingly, J B P states that petitioner is not entitled to the protection of or to the rights of the Judiciary Law. Moreover J B P maintains that even if petitioner were entitled to 50% of the refund, it should be 50% of $6.054.49, or $3,027.24, and not 50% of this sum plus interest.

For reasons which are discussed *infra,* it is unnecessary to decide these defenses.

 Jurisdiction to determine this issue has been examined. The law is apparently settled that an attorney of record in a suit under which an action for a lien is brought has, by the New York Judiciary Law, § 475, a lien on his client's cause of action to secure payment of his

compensation. This lien may be determined and enforced summarily in a proceeding ancillary to the main suit. Nic Projector Corp. v. Movie-Jecktor Co., D.C.S.D.N.Y.1935, 16 F.Supp. 605, 606. This power under § 475 of the Judiciary Law of New York State is applicable in the federal courts. Nolan v. Hemingway Bros. Interstate Trucking Co., D.C.S.D. N.Y.1950, 88 F.Supp. 111. Jurisdiction of this Court in this matter has been conceded by both sides, and this Court so finds.

The first issue to be determined by the Court is whether there was a valid contingent fee contract which petitioner may use as the basis for his contention that an attorney's lien exists on the check he is withholding from J B P Holding Corporation.

█ The contract upon which petitioner relies is set out as follows:

October 22, 1956

"Mr. Joseph Shapiro

"115 Central Park West

"New York, New York

"Dear Joe:

"We are planning to file suit for a refund of about $17,000.-00 on account of taxes paid by J. B. P. This involves the issue of rent income and depreciation for 1951. The chief question involved is the valuation of the factory and in order to sustain our case, we expect to engage an expert who will be able to give convincing evidence in court.

"We would be willing to bring this suit on a contingent basis with our fee to be 50% of the total recovery. We will of course, bear the expense of the expert. ~~We will bill you for the filing fees and such other minor incidental costs, as may be incurred pursuant to rules of the District Court.~~

"We would appreciate your signing the original of this letter to signify your consent to this proceeding. Will you please return the signed letter as soon as possible, and retain the duplicate for your files.

"Very truly yours,

"DAVID KAMERMAN

"By:

"Jerome Kamerman

"/s/Joseph Shapiro

"Approved by. Joseph Shapiro *subject to above deletion as discussed with Mr. David Kamerman*

"JK**PC:A

Encl."

The original draft of this contract provided for the client to pay fees and costs. Mr. Shapiro, acting on behalf of J B P deleted this clause, initialed the deletion, and added the words *"subject to above deletion as discussed with Mr. David Kamerman"* in his own handwriting below his signature.

█ The Court concludes that this contract is void as champertous in that the client deleted the obligation to pay costs and Kamerman apparently accepted such deletion. Moreover, the line immediately preceding the deletion states "We will of course, bear the expense of the expert." This provision that the attorney undertook to pay part of the expenses of the litigation removes any doubt as to the champertous nature of the contract. Any agreement whereby an attorney agrees to pay expenses of the proceedings to enforce the client's rights is champertous. In re Gilman's Adm'x, 1929, 251 N.Y. 265, 167 N.E. 437. See also, Lawrence v. Commodore Navigation Corp., 2 Cir., 1940, 108 F.2d 563.

█ The laws concerning champertous activity have had a long history in our jurisprudence. The basic elements of the offense include an agreement and undertaking by one person to defray, in whole or in part, the expenses of another's suit and by the latter person to divide with the former the fruits of the litigation in the event in proves successful. 14 C.J.S. Champerty and Maintenance § 1 (a), p. 356.

The historical objection to this behavior was grounded in the belief that this offense permitted intermeddlers to stir up strife by speculative litigation. The law which evolved was designed to curb this behavior. Today, most jurisdictions view as champertous a contract for a contingent fee where it embodies an agreement that the attorney shall pay any costs or expenses of the litigation. Watkins v. Sedberry, 1922, 261 U.S. 571, 43 S.Ct. 411, 67 L.Ed. 802; United States ex rel. Payne v. Call, 5 Cir., 1923, 287 F. 520; Kane v. Sesac, Inc., D.C.S.D.N.Y. 1943, 54 F.Supp. 853; Rest., Contracts, § 542(1) (a).

■ Concededly neither party has raised an objection to the enforcement of this contract, the area of difference revolving around the contract interpretation as to the extent of the term "recovery." However, the parties by failing to object to an unlawful contract cannot make such contract enforceable.

■■ An attorney's lien under § 475 of the Judiciary Law, being equitable in nature, the Court must be satisfied of the existence of the equitable right before ordering its enforcement. Petitioner's action in entering into this champertous contract precludes his seeking equitable relief from this Court. Where the agreement is unlawful, an attorney can have no lien for services performed thereunder. Op.Atty.Gen. of N.Y. 300 (1907).

■ However, though the contract of employment is champertous, this does not bar recovery on a *quantum meruit* basis. Watkins v. Sedberry, 1923, 261 U.S. 571, 43 S.Ct. 411, 67 L.Ed. 802; In re Joslyn, 7 Cir., 223 F.2d 184, certiorari denied, Joslyn v. Fisher, 1955, 350 U.S. 900, 76 S.Ct. 180, 100 L.Ed. 790.

It therefore follows that petitioner's motion must be denied, and the cross-motion directing petitioner to turn over the check made by the United States of America must be granted, except that there shall be no accrual of interest on the amount of the check from June 19, 1958; and it is so ordered.