JOHN B. WILCOXON *et al.*, plaintiffs in error, *vs.* HILLSBER-
RY R. HARRISON, defendant in error.

1. S granted certain lands to trustees, for the use of the Baptist denomi-
   nation of Georgia, to be used and occupied for the public worship of
   Almighty God, and attached to the deed a condition, that whenever
   certain specified articles of religious faith, then held by the Church,
   should be changed, or the property should be used for any other pur-
   pose than that before expressed, the grantor, his heirs or legal repre-
   sentatives, might re-enter and possess and enjoy the land as if the deed
   had never been made : *Held*, that the condition was lawful, and the
   grantor had a perfect right to attach it to his grant of the lands.
2. No public charity can successfully assert an equity, against a plain
   legal right of a private individual.
3. An interest in expectancy, or possibility, may be the subject of assign-
   ment, but the intention to make such assignment must appear clearly
   and indisputably.
4. A deed contained a condition of defeasance upon a certain contin-
   gency, and also provided, that upon the happening of the contingency,
   the grantee might remove any improvements placed upon the premises
   by him : *Held*, that in the absence of an averment that the grantee
   had attempted to remove improvements and had been obstructed in it,
   there was no sufficient reason for the intervention of equity.

Bill in equity and demurrer, in Coweta Superior Court.
Decided by the Hon. O. A. BULL, at September Term, 1860.

The questions presented by the record in this case, arise
out of the following state of facts, to-wit :

On the 25th day of April, 1831, William Saulsbury exe-
cuted a deed, conveying to Samuel D. Echols and four other
persons named, trustees of the Newnan Church, and their
successors in office, ten acres of land, in or near the town of
Newnan, Coweta county, Georgia, for the use of the Baptist
denomination of Georgia, to be used and occupied for the
public worship of Almighty God. The deed set out seven
articles of religious faith, as being held by said denomina-
tion, and then stipulated that the deed was executed upon,
and subject to, the following condition, to-wit : "That if it
should happen that the said trustees of the Newnan Church,
or their successors in office, for the use of the Baptist Church,
of the State of Georgia, shall change the above written arti-

cles of faith, or shall convert or dispose of the aforesaid premises for any other purpose than those herein mentioned, then and from thenceforth, in either of those cases, it shall and may be legal, to and for the said William Saulsbury, his heirs, executors and administrators, into and upon the said granted premises, in the name of the whole, to re-enter, and the same to have again, to repossess and enjoy, as in his and their first and former estate and right, this indenture, or anything hereinbefore contained, to the contrary thereof in anywise, notwithstanding. *Provided also,* that the said trustees and their successors in office, for the use of the Baptist denomination of Georgia, shall or may remove at their discretion, all and any building or improvements which they or any of them shall or may hereafter erect and place upon the aforesaid premises, at any time that said property may be converted from the use for which the same is granted as aforesaid." Afterwards, William Saulsbury, the grantor, died, and Christopher Bowen became his administrator, and after partially administering the estate of the said Wm. Saulsbury, the heirs at law, and distributees and the administrator, came to a settlement, and the administrator paid over to the heirs and distributees of said estate, property and assets amounting in value to the sum of $5,500 00, which sum, by agreement and contract in writing, and under seal, dated the 3d of February, 1834, the said heirs and distributees received " in full satisfaction, payment and discharge for the *whole of the estate both real and personal,* and the said Christopher Bowen is hereby authorized to retain in his hands any and all money that may henceforth, and from this date, come into his hands, arising from the collection of notes, judgments, and accounts due said estate, *or from the sale of the entire of the real and personal estate ;* hereby acknowledging that we have received the sum of $5,500 00 in full satisfaction of all claims that we have, or those whose rights we represent, *to the whole of the estate both real and personal,* as distributees as aforesaid."

On the 28th day of January, 1835, Christopher Bowen sold, conveyed, and confirmed, by a quit claim deed, the said ten acres of land, to John C. Robinson, Thomas W. Bolton,

Davis Owen, William B. Pinson and Joel W. Terrell, trustees of the said Baptist Church at Newnan, Georgia.

About the time, or shortly after the execution of the deed by Saulsbury, as aforesaid, the trustees took possession of the said ten acres of land, and erected thereon a suitable house of worship, and used and occupied the same for that purpose until some time in January, 1845, when the then acting trustees sold the land to one Robert Fleming, who entered upon the premises and built and erected improvements thereon of the value of $1500 00. Subsequently Fleming intermarried with Mrs. Rebecca Ann Harris, who had a considerable estate, which, by deed of marriage settlement, entered into prior to the marriage, was settled upon and vested in her as her own separate estate, free from any claim or control of the said Robert whatever, of which separate estate William H. Baldy was, by the deed of marriage settlement, made the trustee.

Fleming not having paid for the property, it was agreed that Baldy, as her trustee, should pay for the same, and take a deed to himself as trustee for the benefit of Mrs. Fleming. This agreement was performed by Baldy paying the money and the trustees of the church executing a deed to him as trustee of Mrs. Fleming, as aforesaid. The old church building was converted into a comfortable dwelling, and other necessary buildings placed on the land by the trustee of Mrs. Fleming, with perfect confidence in the title to the premises. The trustees' of the Baptist church, after selling the ten acres of land as aforesaid, reinvested the proceeds of the sale in another lot more convenient and better adapted to the purpose, upon which they erected a large, commodious and convenient church, which said denomination have been using as a place of public worship ever since.

William H. Baldy died, and Hillsberry R. Harrison was duly appointed trustee of Mrs. Fleming's separate estate.

Christopher Bowen also died, and some time in the year 1854 the heirs and distributees of William Saulsbury, deceased, procured John B. Wilcoxon to seek and obtain letters of administration *de bonis non* on the estate of William

Saulsbury, deceased, and as such, on the 8th of August, 1854, the said Wilcoxon instituted an action in Coweta Superior Court for said ten acres of land, against the said Robert Fleming, who, with his said wife, was residing thereon, and had so resided by themselves or tenants, from the time of the purchase by Baldy, as aforesaid, to the time of bringing said action of ejectment.

On the 24th July, 1857, and whilst the suit in ejectment was still pending on the appeal, Hillsberry R. Harrison exhibited his bill in equity against the said John B. Wilcoxon as administrator *de bonis non*, as aforesaid, and the heirs at law of the said William Saulsbury, deceased, charging the facts hereinbefore stated, and also alleging that the sa̅⎺⎺ ⁿf the ten acres of land, and the investment of the pro⎯ ̇s in another lot was intended to, and had the effect to promote the convenience of the members and congregation of said church, and carried out more effectually the charitable purpose of the said William Saulsbury, in granting said ten acres of land to said church, as the land so granted was too far off for the convenience of the members and people who wished to and did attend public worship at said meeting house.

The bill prayed a discovery of the facts charged—a perpetual injunction of the action of ejectment and process against the parties defendant to the bill.

The bill also prayed that the complainant might be permitted to remove all the buildings and improvements from the premises, or that the defendants should be decreed to pay complainant the cost or value of the same, in the event that the Court should be of opinion, from the facts of the case, that the defendants were entitled to recover the ten acres of land.

To this bill the defendants set up a demurrer, on the ground that the bill contained no equity, and that under the charges and allegations of complainant he was not entitled to the relief prayed for, or any other relief.

Upon hearing argument on the demurrer, the presiding

Judge overruled the same, and sustained complainant's bill, and error is assigned upon that decision.

BUCHANAN, McKINLEY, for plaintiff in error.

'FREEMAN, SIMS, *contra*.

*By the Court.*—JENKINS, J., delivering the opinion.

The error assigned in this case is that the Court below overruled the demurrer of plaintiff in error to the bill of defendant in error.

1. That William Saulsbury had a perfect right to attach to his grant of the premises in dispute to the trustees of the Baptist Church of Newnan, such a condition of defeasance, upon a certain contingency as there appears, and to provide for the right of re-entry by himself, his heirs, or personal representatives, upon the happening of that contingency, cannot be seriously contested. The bill alleges, that since the death of Saulsbury, and since his administrator-in-chief has fully administered his estate, and settled in full with his heirs-at-law and distributees, the contingency (viz: the conversion of the property to uses other than those to which it had been dedicated by the deed of the donor) has occurred. That the first administrator having died, and the plaintiff in error having been appointed administrator *de bonis non* of the donor, Wm. Saulsbury, is now seeking to recover the premises for the benefit of his heirs-at-law. The defendant in error, who holds the premises under the grantees of Wm. Saulsbury, concedes that he cannot, at law, hold the premises under the deed from Saulsbury, nor indeed under any title he has.

2. But he insists that the deed of Wm. Saulsbury was the dedication of the property to a public charity, which brings the case under a distinct head of equity jurisdiction, and that if (as he insists the fact is) the intention of the donor will be most fully effected by sanctioning the conversion, and appropriating the proceeds of the sale to like purposes, on a different site, equity will sanction it.

There are two answers to this proposition :

1. Allowing that Saulsbury did dedicate this property to charitable use, he did it *sub modo*.   He annexed to the dedication a condition resting on the will of the donees, or (if that form of expression be preferred) of the trustees of this charity, and he distinctly reserved to himself and his heirs the legal right of re-entry and perfect enjoyment of the premises, as if no such deed had ever been made, upon the violation of that condition.   Now that the condition has been violated, and wilfully violated, (though perhaps, for sufficient reasons,) equity will not annul that perfect legal right.   No public charity can successfully assert an equity against such a legal right.   We are not aware that any precedent can be shown for such interposition.

2. It is neither the trustees, nor the beneficiaries of the charity, that now invoke the interference of equity.   It is a stranger who came into the possession of the property by the very conversion, which, by the terms of the deed, worked a forfeiture of title, and authorized a re-entry by the donor, his representatives, or heirs.   It is said he stands in the place of the donee, but the donor expressly stipulated that neither he, nor any other stranger, should stand there.   Forewarned of the forfeiture that waited upon conversion, he aided the donees in converting it, and he must take the consequences. . This is the answer of equity to any plaint he may prefer *under the deed.*

But the defendant in error sets up an equity under the instrument executed and delivered by the heirs-at-law of Wm. Saulsbury to Bowen, the first administrator, and Bowen's quit-claim title to the donees of the intestate, which, it is said, relieved their title to the property from the condition of defeasance, and left them free to dispose of it without prejudice to the title.   It is insisted that the words italicized in the portion of the statement, setting out this instrument, conveyed to the administrator an equitable title to any and every interest which they then had in the intestate's estate, or which they might acquire subsequently by reversion, defeasance, forfeiture, or in any other way.   And further, it

is insisted that they could legally and effectually make such conveyance. We may concede to the defendant in error that an expectancy, or even a possible interest, may be the subject of assignment, but the intention to assign and dispose of an interest in expectancy so very remote, a seeming bare possibility (as this was at the time the document in question was executed) must appear clearly and indisputably.

That document was executed and delivered by the distributees of Saulsbury's estate to the administrator, upon a settlement between those parties, and as evidence of that settlement. The distributees resided in a remote State, and were represented by an agent sent out and fully empowered to make a final settlement with the administrator. It appears that neither the *choses* in action, left by the intestate, nor those taken by the administrator, on sale of property, had been fully converted into money. To receive these from the administrator, and attempt their collection, would have been inconvenient to the distributees. To return here from their distant residence for a final settlement, would have been scarcely less so. We gather from the entire instrument, that they received from the administrator the agreed value of these assets and abandoned them to him. The clause of the relinquishment and assignment expresses this intent and nothing more. There is nowhere in the document any express reference to the subject matter of this litigation, and the language used must be most unreasonably stretched to cover it. We can not do such violence to a document which we think clearly imports a settlement touching all such property as had come to the hands of the administrator, or were then subject to his administration. This interest does not fall within that description, and consequently the administrator, Bowen, acquired no title, legal or equitable, to it, by that settlement. It follows that his quit claim deed passed no title to the trustees of the Newnan church, and cannot avail the defendant in error. But it is again insisted, that he has an equity in the improvements made by him on the lot, to remove them or to be compensated for them in money. If the defendant have any

such valid claim, it must result from the clause in Sauls-
bury's deed which provides for the removal, by the grantees,
of any buildings which may have been erected on the premi-
ses, previous to the conversion which should defeat their
title. It is not stated that they had attempted any such
removal and had been obstructed in it. We see in the
record no sufficient reason for the intervention of equity
between these parties, and think the demurrer should have
been sustained.

Let the judgment be reversed.