16322.   BROWN GUANO COMPANY *v.* BRIDGES.

1. If executors, empowered by will to sell lands of the decedent, sell them for the purpose of division, the proceeds are personalty, unimpressed with the character of real estate, and therefore are subject to garnishment.

2. The trial judge, sitting as court and jury, was authorized to find that the paper relied upon by the claimant, when considered in connection with the extraneous evidence with reference thereto, constituted an equitable assignment of the assignor's legacy or interest in his father's estate, provided it was supported by a consideration.

3. But where a claimant in garnishment relies on what purports to be a mere equitable assignment of a fund, transferred as collateral security for a pre-existing debt, the debt will not of itself afford a consideration for the assignment, or raise any presumption of such consideration, but the burden is upon the assignee to show a valuable consideration for the transfer. No consideration for the assignment being made to appear in the instant case, the finding and judgment in favor of the assignee, as claimant, was without evidence to support it.

DECIDED NOVEMBER 19, 1925.

Complaint; from city court of Dawson—Judge Edwards. February 19, 1925.

J. M. Bridges died testate in February, 1923. R. H. Jennings and J. W. Bridges were named executors of his will and both qualified. They were empowered by the will to sell any and all of his property at public or private sale as they might deem best without any order of any court. At the time of the testator's death, R. L. Bridges, one of the legatees, was indebted to Brown Guano Company on a note, upon which the company filed suit against him to the January term, 1924, of the city court of Dawson, and obtained judgment at the following April term for approximately seven hundred dollars. During the pendency of this action the plaintiff therein sued out a garnishment and caused service thereof to be made on the executors respectively on March 22 and 27, 1924. The executors on March 29 obtained an extension of the time in which to respond and did not answer finally until January 10, 1925. Their answer as then made averred that they had reduced the assets of the estate to cash and that the net amount of R. L. Bridges's share was $977, but that this was claimed by C. E. Bridges under a transfer from R. L. Bridges "which was presented to the executors prior to the service upon them of any garnishment, which transfer was accepted by them in writing." The answer further alleged that the amount in question with the

exception of a few dollars was derived from the sale of real estate and therefore was not subject to garnishment. Brown Guano Company traversed the answer except as to the amount. C. E. Bridges filed a claim to the fund and was *formally* made a party to the garnishment proceedings. The issues thus formed were submitted to the court without a jury, and after hearing the evidence the presiding judge awarded the fund to C. E. Bridges, and Brown Guano Company excepted. The writing between R. L. Bridges and C. E. Bridges which formed the basis of the latter's claim was introduced in evidence and, including the purported acceptance, was as follows:

"To the Executors of the Estate of J. M. Bridges, deceased:

"You are hereby authorized to pay C. E. Bridges the sum of $3258.76, principal, with interest, the same to be paid on or before December 1st, 1924, and to charge the same to my distributive share as an heir at law of the estate of J. M. Bridges. It being agreed that his receipt for the amount stated shall operate as my voucher for same. This the 11th day of October, 1923.

(Signed) "R. L. Bridges."

"Attest: C. D. Cocke, N. P. T. C. Ga.

"Accepted, in so far as our power and authority as executors of the estate of J. M. Bridges, deceased, authorizes the same. This 11th day of October, 1923.

(Signed) "R. H. Jennings.
"J. W. Bridges.
"For the executors."

C. E. Bridges, the claimant testified, "I am the claimant in this case. I claim the funds now in the hands of the executors of the estate of J. M. Bridges, deceased, by reason of this order (witness identifies order) which was given to me and signed by R. L. Bridges, dated October 11, 1923. This order was given me by R. L. Bridges on the date which it bears. I took this order in good faith from R. L. Bridges, and gave value received for the same. I did not know at the time I took this order that R. L. Bridges owed any other debts. He owed me the sum of $3,258.76 at the time he gave me this order. He owed me this sum for supplies and guano which I had furnished him during the years 1922 and 1923. He was unable to pay me, and he gave me this order on the executors, to secure me in what he owed me. R. H.

Jennings, one of the executors, signed the acceptance on the order at the time it was given. J. W. Bridges, the other executor, knew about the order, and promised to sign it, but did not sign it until some time after the order was given. He did sign the order long before the executors sold the land belonging to the J. M. Bridges estate, and he signed the same before Brown Guano Company obtained their judgment. I took this order to secure me in what R. L. Bridges owed me. He still owes me the amount set out in said order, with the exception of about $1,100 which was paid me in a land transaction, which amount I allowed him in the trade. I still hold against him the evidences of the debt, which I had at the time the order was given me. I knew at the time I took the order that the executors of the estate of J. M. Bridges did not have on hand any money belonging to R. L. Bridges. The only thing they had at the time, was R. L. Bridges' interest in the real estate. I presented this order to R. H. Jennings, one of the executors, at the time it was given me, and he signed the acceptance on the same. I put this order on record March 28, 1924. I did not put it on record before that time because I did not think it was necessary. J. W. Bridges, the other executor of the estate of J. M. Bridges, did not sign the acceptance on the order until after the order was placed of record. He knew about the order, however, before that time. R. L. Bridges is my brother. My father, J. M. Bridges, died February 28, 1923. I knew at the time I took the order that R. H. Jennings and J. W. Bridges were both qualified as executors of the estate of J. M. Bridges, but did not know that it was necessary for both of them to sign the acceptance."

R. H. Jennings, one of the executors, testified that at the time he signed the order or writing in question the executors did not have on hand any funds or money belonging to R. L. Bridges, as they had already distributed all funds that had come into their hands from the sale of the personalty; that they never at any time had on hand the sum of $3,258.76 belonging to him, and that his interest in the estate, both real and personal, above his indebtedness to the estate, did not amount to that much. The entire amount which the answer admitted to be due ($977), with the exception of a few dollars, was derived from the sale of real estate, the proceeds of which were not collected until during October and

later in the year of 1924. There was no other material evidence.

*R. R. Jones,* for plaintiff.

*W. H. Gurr,* for defendant.

BELL, J. (After stating the foregoing facts). 1. The defendant in error insists that the judgment was right because the fund in controversy, having been derived from the sale of real estate, was to be treated as realty, and as such was not subject to garnishment. We are unable to agree that money derived from the sale of real estate by executors should be considered different in character from any other money in their hands, where the question is merely whether it is subject to garnishment by a legatee's creditors. On the theory of equitable conversion, the proceeds of real estate sold under a power of sale conferred by the will of a decedent are usually regarded as personal assets of the estate. 11 R. C. L. 120, and cases cited. "Where a testator directs that real estate shall be converted into personalty, or vice versa, the direction impresses the property with the character of that into which it is to be converted, from the date upon which the change is to be made." Civil Code (1910), § 3913. It was the duty of the executors who were the garnishees to answer what property, money, or effects they had in their hands belonging to the defendant at the date of the service of the garnishment and also what property, money, or effects of the defendant had come into their hands at any time from the date of the service to the date of the answer. Civil Code (1910), §§ 5271, 5272. The real estate had been converted into money and was personalty at the time the garnishees made their answer. It seems clear that the fund was subject to the process of garnishment. See, in this connection, *Gammage* v. *Perry,* 29 *Ga. App.* 427 (116 S. E. 126).

2. The next question that presents itself is whether the writing, provided it was supported by a consideration, constituted either a legal or equitable assignment of the fund. Any language, however informal, will be sufficient to constitute a legal assignment, if it shows the intention of the owner of the right to transfer it instantly, so that it will be the property of the transferee. *Southern Mutual Life Ins. Co.* v. *Durdin,* 132 *Ga.* 495 (1) (64 S. E. 264, 131 Am. St. Rep. 210). It is further true, however, that "An instrument, other than a draft, purporting to assign a sum

of money to be paid out of a fund claimed to be in the hands of another, without describing the identical money intended to be conveyed, will not of itself convey legal title to any part of the fund which in fact may be in the hands of such other person." *W. & A. R. Co.* v. *Union Investment Co.*, 128 *Ga.* 74 (1) (57 S. E. 100). And measuring it by this rule, we are of the opinion that the writing in question did not operate to convey legal title to the fund in controversy and therefore did not constitute a legal assignment. See also *Baer* v. *English*, 84 *Ga.* 403 (1) (11 S. E. 453, 20 Am. St. Rep. 372). Did it amount to an equitable assignment? In the case of *Jones* v. *Glover*, 93 *Ga.* 484 (1) (21 S. E. 50), it is said, "In order to infer an equitable assignment, such facts and circumstances must appear, as would not only raise an equity between the assignor and the assignee, but show that the parties contemplated an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment."

We are of the opinion that it sufficiently appears from the extraneous evidence and the writing itself that it was the intention of the parties in the present case to make an immediate change of ownership with respect to the fund in question. It is not necessary that the fund attempted to be assigned shall be in actual existence at the time, for it is well settled that it is sufficient if it "exists potentially." It is possible to make an equitable assignment in writing even of money yet to become due. *Walton* v. *Horkan*, 112 *Ga.* 814 (38 S. E. 105, 81 Am. St. Rep. 77). The instrument in question does not fail as an equitable assignment merely because the amount of money therein stated was in excess of the drawer's legacy. *Ison Co.* v. *Atlantic Coast Line R. Co.*, 17 *Ga. App.* 459 (2) (87 S. E. 754). The interest of a legatee in an estate is assignable, under the law of this State. Civil Code (1910), § 3654; *Newsome* v. *Cogburn*, 30 *Ga.* 291; *Wilcoxon* v. *Harrison*, 32 *Ga.* 480; *Pylant* v. *Burns*, 153 *Ga.* 529 (112 S. E. 455, 28 A. L. R. 423). The instrument not being a draft, and the proceedings being in garnishment, it was not necessary for the executors to consent thereto, even if the assignment had been of a part of the fund only. *Few* v. *Pou*, 32 *Ga. App.* 620, 624 (124 S. E. 372); *Western & Atlantic R. Co.* v. *Union Investment Co.*,

128 *Ga.* 74 (57 S. E. 100) ; *Western Union Tel. Co.* v. *Ryan,* 126 *Ga.* 191 (2) (55 S. E. 21). The rule would be otherwise as to a partial assignment sought to be enforced in a common-law action against the debtor or holder of the fund. *Rivers* v. *Wright,* 117 *Ga.* 81 (43 S. E. 499).. Under the facts of this case it was not necessary for the executors to accept or assent to the assignment, and we therefore need not determine the sufficiency of the effect of their purported assent as made. *Southern Ry. Co.* v. *Pitner,* 17 *Ga. App.* 451 (87 S. E. 754). We conclude that the trial judge, acting as court and jury, was authorized to find that the instrument in question, when considered in connection with the extraneous evidence with reference thereto, was an equitable assignment of the assignor's interest in his father's estate. See, in this connection, *Brown* v. *Southern Ry. Co.,* 140 *Ga.* 539 (79 S. E. 152).

3. But the above conclusion as to the validity of the instrument as an equitable assignment has been reached on the assumption that it was supported by a consideration. The claimant assignee testified that he had taken the instrument to secure him in what his brother, the assignor, owed him and that the debt was still existing. In *Few* v. *Pou,* supra, this court said, "Where therefore, a claimant in garnishment relies upon what amounts to a mere equitable assignment of rents, transferred as collateral security for a pre-existing debt, such existing debt will not of itself afford any presumption as to a valuable consideration supporting the assignment, but the burden is upon the assignee to show some valuable consideration to support the transfer." The claimant testified also, in general terms, that he paid value received for the assignment; but when his entire testimony is considered together and construed most strongly, or even reasonably, against him, it appears that what he considered as "value received" was the existing debt which the assignment had been taken to secure. And the mere fact that the fund referred to in the assignment was to be paid on a date in the future would not be sufficient to show an extension of the maturity of the indebtedness secured thereby, although such extension, if made, might of itself have amounted to a consideration. As to this feature of the case we are of the opinion that the claimant failed to show any consideration for the

42

assignment, and that, therefore, the court erred in awarding the fund to him.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*