Oscar C. KOLB, Bankrupt, Appellant,

v.

Robert A. BERLIN, Trustee, Appellee.

No. 22344.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1966.

George Kushinka, Warner Robins, Ga., for appellant.

Fred Hodges, Macon, Ga., for appellee.

Before BROWN, WISDOM and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

The appellant-bankrupt is a federal civil service employee at Robins Air Force Base, Georgia. He filed his bankruptcy petition on March 18, 1963. Although no mention was made in the petition of accrued wages or annual leave, it

developed that at the time the petition was filed appellant was due $85.95 in accrued wages. In addition, a check in the net amount of $144.50, representing wages earned during the prior pay period and payable to appellant by his employer, had been processed but had not been delivered. Furthermore, it was established that as of March 18, 1963, appellant had a balance of 144 hours of earned annual leave, valued at $288.00. The trustee thereupon filed an application to compel the appellant to turn over the total of the above amounts ($518.45).

The Referee, in a thorough and well-reasoned opinion, held that all the above interests were assets of the bankruptcy estate, ordered appellant to turn over to the trustee $230.45 (the total of the $85.95 in accrued wages and the check for $144.50), and further ordered that the bankrupt turn over to the trustee any payment for the 144 hours of earned annual leave which he might receive. The decision of the Referee was affirmed by the District Court on petition for review. We likewise affirm, for the reasons hereinafter stated.

The question to be determined is whether the above interests constitute property which under the provisions of the Bankruptcy Act [1] vests in the trustee upon the filing of the bankruptcy petition. Each of the items will be discussed separately.

1. *Accrued Wages of $85.95.*

Appellant contends that under § 70a (5) of the Bankruptcy Act his accrued wages do not pass to the trustee since the United States, as sovereign, cannot be made to respond to levy or judicial process. Of course, the test under § 70a (5) is in the alternative—transferability *or* leviability. 4 Collier on Bankruptcy ¶ 70.15(2). In determining whether these accrued wages are transferable, we must first consider the possible application of the Assignment of Claims Act,[2] which renders null and void transfers of any claim against the United States unless the statutory requirements are met.

This problem was considered by this Court in Segal v. Rochelle, 5th Cir. 1964, 336 F.2d 298. That case has now been affirmed by the Supreme Court in Segal v. Rochelle, January 18, 1966, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428. There the Supreme Court reaffirmed the holding in Martin v. National Surety Co., 1937, 300 U.S. 588, 596, 57 S.Ct. 531, 81 L.Ed. 822, that the Anti-Assignment Act "must be interpreted in the light of its purpose to give protection to the Government" so that as between the parties effect might still be given to an assignment that did not comply with the Act.

The Court in *Martin* also stated: "An assignment ineffective at law may none the less amount to the creation of an equitable lien when the subject matter of the assignment has been reduced to possession and is in the hands of the assignor or of persons claiming under him with notice." In Segal v. Rochelle, supra, the Supreme Court satisfied itself

---

1. 11 U.S.C. § 110(a) (5) (1964 ed.), the pertinent parts of which provide: "(a) The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *."

2. 31 U.S.C. § 203, the relevant parts of which provide: "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

that an assignment of the claims in question would be enforced in equity under Texas law and therefore found the claims to be transferable within the meaning of § 70a(5). In the instant case, it is equally clear that under Georgia law an assignment of appellant's claim for accrued wages would be so enforced. See Atlanta Finance Co. v. Lunsford, 1924, 32 Ga.App. 787, 124 S.E. 813; Southern Railway Company v. Cole, 1934, 49 Ga. App. 635, 176 S.E. 512. Therefore, we hold that appellant's accrued wages of $85.95 were property which could have been transferred under § 70a(5) and thus were vested in the trustee upon the filing of the bankruptcy petition.

### 2. *Undelivered Pay-check for $144.50.*

■ Appellant's argument here is that since the check had already been processed, he was in constructive possession of it and was thus entitled to a credit in the amount of the check against the sum of $300.00 which he paid for attorney fees and court costs after the bankruptcy petition was filed. The basis for this contention is that attorney fees and court costs have priority under § 64a(1) of the Bankruptcy Act, 11 U.S.C. § 104(a) (1).

The Referee correctly held this contention to be without merit. Of the $300.00, $50.00 was used to pay appellant's filing fee and $50.00 was used to pay his wife's fee (she also filed a bankruptcy petition). The remaining $200.00 was paid as attorney fees, but there is no indication of how much of this sum was paid for his wife's attorney fees.

It is true that § 64a(1) of the Act lists "one reasonable attorney's fee" among the debts which have priority, but it is clear that "[t]he amount of attorney's fee to be charged the estate as an expense of administration is subject to the examination and approval of the court." Watkins v. Sedberry, 1923, 261 U.S. 571, 575, 43 S.Ct. 411, 412, 67 L.Ed. 802. See also Texas Bank & Trust Co. of Dallas v. Crippen, 5th Cir. 1956, 235 F.2d 472. In other words, once the bankruptcy petition is filed, the award of an attorney's fee is a responsibility of the Court which cannot be exercised by the bankrupt.

As to the court costs, § 64a(1) of the Act is itself sufficient answer to appellant's contention, since it gives priority status only to persons other than the bankrupt who have paid his filing fees. There is no provision in the Act authorizing reimbursement to the bankrupt for costs which he has paid.

While conceding that the distribution of the bankruptcy estate is a duty which falls specially upon the bankruptcy court, appellant urges that no creditors have yet filed proofs of claim and therefore argues that to sustain his position would not frustrate the broad purpose of the Bankruptcy Act, which is to effect equitable distribution of the bankrupt's estate among creditors. Kothe v. R. C. Taylor Trust, 1930, 280 U.S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382. As pointed out by the Referee, however, tardy creditors are still not precluded from filing claims under § 57(n) of the Act, 11 U.S. C. § 93(n). In short, appellant may not administer his own estate without the intercession of a referee and a trustee.

### 3. *Earned Annual Leave.*

■ Under the provisions of 5 U.S.C. § 2062(c), appellant was entitled to accumulate unused annual leave for use in succeeding years not to exceed a total of thirty days. At the time he filed his petition, appellant had accumulated 144 hours of earned annual leave. It is appellant's position that his annual leave with pay does not pass to the trustee, because it is at most a contingent interest and cannot be subjected to judicial process or transferred by the bankrupt.

The Supreme Court has now made it clear in Segal v. Rochelle, supra at 515, that the mere fact that an interest is contingent does not remove it from the definition of "property" in § 70a(5):

"The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed

most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. E. g., Horton v. Moore, 6 Cir., 110 F.2d 189 (contingent, postponed interest in a trust); Kleinschmidt v. Schroeter, 9 Cir., 94 F.2d 707 (limited interest in future profits of a joint venture); see 3 Remington, Bankruptcy, §§ 1177–1269 (Henderson ed. 1957)."

Appellant relies on Tennessee Valley Authority v. Kinzer, 6th Cir. 1944, 142 F.2d 833. There, as pointed out in In re Kuether, N.D.Cal.1962, 203 F.Supp. 223, the bankrupt employee's right to receive accumulated vacation pay was dependent upon several contingencies which are not present here. In the instant case, annual leave may be taken only with the approval of appellant's superior, but, even if approval is never given, a lump sum payment must be made in the event that appellant is separated from government service, 5 U.S.C. § 61b, or dies, 5 U.S.C. § 61f. As stated by the Supreme Court in Segal v. Rochelle, supra, "postponed enjoyment does not disqualify an interest as 'property' * * *" and "contingency in the abstract is no bar * * *." See also 42 Tex.L.Rev. 542.

As to the question of whether this earned annual leave is transferable, our discussion with regard to the accrued wages is equally applicable here. It is clear under Georgia law that interests more "contingent" than the one in question have been held to be validly assignable. See, e. g., Bennett v. Davis, 1946, 201 Ga. 58, 39 S.E.2d 3; Padgett v. Butler, 1951, 84 Ga.App. 297, 66 S.E.2d 194; Brown Guano Co. v. Bridges, 1925, 34 Ga. App. 652, 130 S.E. 695.

For the foregoing reasons, we reiterate our holding that all of the above-described interests are property which vested in the trustee as of the date of the filing of the bankruptcy petition.

Affirmed.

BROWN, Circuit Judge (concurring):

I concur in the result and in the opinion. But I think there is more than meets the eye as to earned annual leave. Granted that it is "property" that comes under the Trustee's Strong Arm, just what are we doing about realizing its economic value for creditors?

One might assume that the Bankruptcy Court could order the Bankrupt to apply for annual leave. But will his superior grant it? And if he does, then what? Must the Bankrupt "take" this vicarious vacation—only to see the wife and children sit idly by at home while he neither works nor receives any pay? If he stays on the job and works to receive this post-bankruptcy wages with which to support his family, he is not at the same moment on annual leave. The result is that the only way for the creditors to realize on this value is to enforce post-bankruptcy idleness without pay for the period represented by accumulated annual leave. Required as it is in the name of law, one wonders in this twentieth century what has happened to the Thirteenth Amendment. What has happened to the policy behind the bankruptcy law that after discharge, one's past economic derelictions are not to be visited on the debtor, and that with a clear conscience, head held high, the former bankrupt can look the world in the face? And for what length of time, what number of years, is the Bankrupt to face this crucial alternative—no recreational vacation or enforced idleness without pay? One year? Two years? Five years? What happens in the meantime to his employer's—the United States Government—interest in his employment efficency? Worse, what happens to the bankruptcy system? Does this case remain open until such time as the Employee-former-Bankrupt makes the hard choice? Until he retires? Until he dies?

Perhaps the answer to these queries must be found in the good faith effort of all concerned to put a dollar valuation on this highly contingent property interest under a court-approved compromise. 11 U.S.C.A. § 50. Florida Trailer & Equipment Co. v. Deal, 5 Cir., 1960, 284 F.2d 567, 94 A.L.R.2d 638.